[No. 4,058.]

ALEXANDER CAMPBELL v. GEORGE E. BUCKMAN.

FINDINGS OF FACTS.—In actions tried by the Court since the passage of the Codes, where findings of facts are made, the Court must find on all the material issues made in the pleadings.

IDEM.—A statement in the findings of facts, that no testimony was offered by either party upon an issue made in the pleadings, is not a finding in the negative on such issue.

DECEIVING LAND OFFICERS.—If a patent to land is issued to a railroad company. under a grant made by Congress of alternate sections along the line of its route, and ejectment is brought on the patent against one who had settled on the land, and acquired a pre-emption right before the land had been withdrawn from market, and he depends on the ground that the land officers were misled by false and fraudulent testimony of the agent of the railroad company, the facts that such agent swore that the land was vacant and unappropriated, and that the land officers did not know that the defendant was on the land, tend to show that the land officers were so misled.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the 1st day of July, 1862, Congress passed an Act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific ocean, by which Act, and an amendment thereto, passed July 2, 1864, there was granted to the Central Pacific Railroad Company of California, the alternate odd sections of public land within a belt of ten miles on each side of the road. On or about the said 1st day of October, 1864, said company assigned to the Western Pacific Railroad Company, the right to construct so much of the railroad provided for in said Acts, as was included between the city of Sacramento and the city of San José, together with the grant of land between said cities. On or about the 1st day of December, 1864, the railroad company filed in the General Land Office at Washington, a map of the general route of said western division leading from Sacramento to San Francisco, by way of San José. On the 23d day of December, 1864, the Commissioner of the General Land Office directed the Register and Receiver of the Land Office at San Francisco, upon the receipt of his letter of that date, and the map of the said western division transmitted therewith, to withdraw from sale, location, pre-emption and homestead, the vacant odd numbered sections and parts of sections, within twenty-five miles on each side of the line of the railroad. This letter and map were received and filed by the Register on the 30th day of January, 1865, and the withdrawal was then made as directed.

This was an action of ejectment to recover the north-west quarter of section thirteen, township number seven south, range two west, Mount Diablo meridian. The demanded premises were within the belt of ten miles granted to the railroad, and were surveyed by the United States in 1866, and the plat of the survey was filed in the Local Land Office at San Francisco, on the 18th of April, 1866. The defendant settled on the demanded premises in June, 1863, and had continuously cultivated and resided on the same, up to the time of trial, and was a qualified pre-emptioner, and settled on the land for the purpose of pre-empting the same. Within two months after the official plat of the sur-

vey was filed, he made a declaratory pre-emption statement, in which he claimed a right to enter said quarter section as a pre-emptioner, and sent the same, with the fees required by law for filing, by one Henry Frost, to the Register at San Francisco, to be filed, but Frost failed to file the same. On the 8th day of October, 1866, Charles Sanger, the Land Agent of the said Western Pacific Railroad Company, made out in writing, verified by his oath, and presented to the Register, at San Francisco, an application list of said last named company, for the lands granted to it, and the demanded premises were included in the list, and said Sanger in his oath, stated that all the lands contained in the list were vacant, unappropriated and not reserved. The list made out by Sanger was approved by the Commissioner of the General Land Office and the Secretary of the Interior, and about the 9th day of June, 1867, a patent for the demanded premises was issued to the railroad company. The said company afterwards sold to the plaintiff and made him a conveyance, and he thus acquired the title on which he relied in this action. The Court below found as a fact that the affidavit of Sanger attached to the list of lands, was not true, as, at the time it was made, and for three years prior thereto, the demanded premises were in the open and notorious possession of the defendant.

About the 1st of October, 1866, the defendant applied to the Register and Receiver at San Francisco for leave to file his declaratory pre-emption statement, and to be allowed to make proof and .pay for, and enter the land, but his application was denied, and the matter was referred to the Commissioner of the General Land Office at Washington, and the Commissioner, on the 22d of November, 1866, directed the Register and Receiver to make an investigation of the case, after giving notice to the parties in interest. The notice was given, and the parties appeared before the Register and Receiver, and produced their proofs, and the same were forwarded to Washington, and the Commissioner afterwards sent the case and proofs back to the Register and Receiver for further proof. Further proofs were offered by the parties, and the same were forwarded to the Commis-

sioner of the General Land Office, who, on the 13th day of October, 1868, decided the contest in favor of the defendant, and directed the Register and Receiver to allow him to make proof and payment, but, in his decision, described the land as lying in range one west, instead of range two west, where it is located. The Register and Receiver referred the matter back to the Commissioner for further instructions. The defendant again applied to the Commissioner to be allowed to prove up and pay for the land, and the application was pending when the case was tried. The answer set up the above facts, and prayed that the plaintiff's patent be declared null and void, and that the plaintiff be enjoined from setting up any title to the land, and from prosecuting this action. There was an allegation that the plaintiff bought with knowledge of the above facts. The Court below held, as a conclusion of law, that the failure of the defendant to file his declaratory statement as a pre-emptioner, within three months from the time of the filing of the plat of the survey, deprived him of his pre-emption right, and rendered judgment for the plaintiff. The defendant appealed.

*Moore, Laine & Leib,* for the Appellant.

The sole power of disposing of the public domain is vested in Congress. (Constitution of the United States, Article IV., Sec. 3.) It results therefore, that the Commissioner of the General Land Office, President and other executive officers of the United States concerned in issuing patents, have no power either to sell, give away or patent the public lands, except as they are authorized so to do by Congress in express terms. They can only act as they are acted on.

The railroad laws authorize officers to issue patents to land to said railroad companies, but only to such lands as Congress has granted them; Congress makes the grant, and these officers issue the patents to such granted lands; but if they attempt to issue patents to lands not granted by Congress, their acts are void for want of power.

This is plain certainly. Let us see, then, what lands are granted; there are but two Acts touching this matter, the first the Act of 1862. (Lester, Vol. 2, p. 52, Sec. 3.)

By this section, Congress grants only lands not sold, reserved or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed.

Now, Buckman's claim attached when he settled in 1863, and the line of road was not definitely fixed until 1864, in December; hence, the land of Buckman was not granted. The remaining Act is that of July 4, 1864. (Lester, Vol. 2, p. 122-3, Sec. 4.)

This Act was passed before the line of road was definitely fixed, and it limited and more clearly defined the grant in these words, viz:

"Any land granted by this Act, or the Act to which this is an amendment, shall not defeat or impair any pre-emption, homestead, swamp land or other lawful claim, nor include any government reservation or mineral lands, or the improvements of any *bona fide* settler."

Language could not be plainer. How can land be lawfully patented that Congress has not granted? These laws and grants must be strictly construed against the railroad companies. (*Dubuque R. R. Co.* v. *Littlefield,* 23 Howard, U. S. 88.)

No laches of Buckman in filing his claim could have the effect of enlarging the grant to the company. Congress did not grant improved or settled lands, nor did the Act provide that the company should receive such lands in case the pre-emptors failed to assert their claims. The department has so held in cases where the railroad company tried to induce settlers to buy from them, and thus defraud the government of its just revenue. (Zabriskie, p. 297-8.)

But Buckman was not required to file any declaratory statement in order to perfect his claim or receive protection; this is well settled both by statute, instruction and decision. (Lester, Vol. 1, p. 213, No. 234; Lester, Vol. 1, p. 376, No. 413; Zabriskie, p. 101, No. 39; Zabriskie, p. 291, No. 81; *Collins* v. *Bartlett,* 44 Cal. 371.)

*Tully R. Wise,* for the Respondent, argued that only the government or those claiming under it could contest the

patent, and that the defendant had not connected himself with the title of the government in such a way as to enable him to contest the patent, and cited *Jackson* v. *Lawton*, 10 Johns. 24; *Mowry* v. *Whitney*, 14 Wallace, 434; *Gibson* v. *Chanteon*, 13 Wallace, 92, and *Frisbie* v. *Whitney*, 9 Wallace, 187.

Mr. Chief Justice WALLACE delivered the following opinion, in which Mr. Justice NILES concurred:

Sanger, agent for the railroad company, in making the application to the Land Department for the patent, upon which the plaintiff now relies, is found by the Court below to have "falsely and fraudulently stated, and represented that all of the lands in said list contained (including the premises in controversy), were vacant, unappropriated and not reserved," etc., and an important question of fact put in issue by the pleadings was as to whether the officers of the Land Department were deceived and misled thereby into the approval of the application.

Had it been found that they were, a very serious question would have arisen as to whether this action, based upon the patent obtained by such means, should not have been stayed until the determination of the defendant's pending application to be allowed to pre-empt the land in controversy. No express finding is made by the Court below upon this question of fact, and the trial having occurred since the taking effect of the Code, no finding can be implied in support of the judgment. The statement inserted among the findings of fact, to the effect that no evidence upon this point was given by either party, cannot, under the Code, be accepted as a virtual finding in the negative. Besides, the very facts set forth in the other findings tend, in some degree at least, to support a contrary conclusion. The evidence upon this point, such as it was, should have been weighed by the Court below, and the question of fact determined.

Judgment reversed, and cause remanded for a new trial.

Mr. Justice CROCKETT delivered the following concurring opinion in which Mr. Justice MCKINSTRY concurred:

One of the issues under the cross-complaint and the answer thereto was, whether the Register and Receiver were deceived and imposed upon by the affidavit of Sanger, which the Court finds was false and fraudulent; and the finding on this issue was that "no evidence was offered by either party that the Register, Receiver, or other officers of the United States Land Office, were or were not misled or deceived by the representations or affidavit of Sanger in this behalf made." This is not a finding, in terms, of the fact whether the Register and Receiver were misled and imposed upon by the false affidavit. The Court below expressed no opinion on that point, unless it is to be inferred from the fact that no evidence was offered by either party on that issue, that the Court found it in favor of the plaintiff. But when a fact is directly put in issue, it is the duty of the Court to find upon it expressly, one way or the other; and a statement by the Judge that no evidence was offered on that point is not the finding of a fact put in issue.

Moreover, this finding is consistent with the ninth finding, which is to the effect that all the averments of fact as set forth in the cross-complaint are true, except as otherwise specially found. On referring to the cross-complaint we find an averment that on the 8th of October, 1866, Sanger, the agent for the railroad company, filed with the Register and Receiver a verified list of lands (which included the land in controversy), in which he stated that all the lands included in the list were vacant, unappropriated, and not reserved, and were of the character contemplated by the grant to the company. The Court finds that this statement was false and fraudulent in respect to this particular tract. The cross-complaint then avers that on the same day on which the list was presented the Register and Receiver approved and certified it, and afterward forwarded it to the General Land Office. There is nothing in the findings to show that when the Register and Receiver approved and certified the list they had any notice or in-

formation of the defendant's claim, or were informed that he then was and had been continuously since 1863 in the actual occupation of the land, claiming it as a pre-emptioner. These facts, if unexplained, certainly constituted some evidence tending to prove that the Register and Receiver were misled and deceived by the false affidavit of Sanger.

It was important to the defendant to have an explicit finding on this issue. If found in his favor, a grave question would have arisen, whether it would not have been the duty of the Court to stay further proceedings in the action, until his application to pre-empt the land had been finally decided by the Land Department.

I think the ends of justice require that there should be a new trial.

I concur that the judgment be reversed and cause remanded for a new trial.

Mr. Justice RHODES did not express an opinion.