FABIAN, respondent, *v.* COLLINS, appellant.

DIVERSION OF WATER — *complaint in action for equitable relief.* The complaint alleged that A. and his grantors on and before April 19, 1876, were the owners of a ditch that conveyed the water of Silver creek in Ottawa gulch upon their placer mines in Jenny's basin; that they had a prior right to the use of the water through said ditch · that, while A. was in the peaceful possession of the water, B. wrongfully diverted the same from the ditch; that B. had diverted the water since April 19, 1876, and threatened to continue such diversion; that A. would thereby be wholly deprived of the use of the water, and great and irreparable injury would result to A., unless B. was enjoined from diverting the same. *Held,* that the complaint states a cause of action, and that A. is entitled to equitable relief against B.

CASES AFFIRMED. The complaints in the cases of *Caruthers* v. *Pemberton,* 1 Mon. 111; *Harris* v. *Shontz,* id. 212; *Toombs* v. *Hornbuckle,* id. 286; *Columbia M. Co.* v. *Holter,* id. 296; *Gallagher* v. *Basey,* id. 457, and *Barkley* v. *Tieleke,* 2 id. 59, commented on and their sufficiency affirmed.

JURY TRIAL IN ACTION FOR DIVERTING WATER. Upon the trial of this action, B. demanded a trial of all the issues by a jury and a general verdict, but the court submitted to the jury a number of special findings and based upon them its judgment. *Held,* that this was a case in equity, and that B. was not entitled to a trial by jury.

WATER RIGHT — *verbal license* — *appropriation of water by possession of*

*ditch.* The grantors of A. entered into a verbal agreement with B., under which they had the privilege of using said water upon their mines in said basin, but were required, upon the demand of B., to permit the water to flow down said gulch to the mining ground of B. Afterward, in 1867, they dug said ditch and used the water until 1872, when they sold and delivered to A. their mines, ditch and water-right. A. used the water in said ditch until April, 1876, when B. demanded the same, and diverted it upon the refusal of A. to deliver the same, and A. then commenced this action. The agreement was never reduced to writing and A. had no notice thereof. *Held,* that B. had a prior right to the use of the water, and that the appropriation by A. must date from 1872, when he took possession of said ditch. *Held, also,* that the agreement was a personal license from B. to the grantors of A., that B. could revoke the same at any time, and that said grantors could not sell and convey any right in the water to A.

SAME —*pleading equitable estoppel in replication.* The answer of B. set forth said agreement, and the replication of A. alleged that B. was estopped from pleading the same, because he was present when A. purchased of said grantors the ditch, water-right and mines, and did not notify A. of the existence of the agreement. B. did not demur to the replication, and upon the trial all the facts relating to the agreement were offered in evidence by both parties. *Held,* that the replication does not allege the facts constituting an equitable estoppel, because it does not appear that A. was influenced in buying said ditch and water-right by the conduct of B., and that A. then had no convenient means of acquiring knowledge of the true state of the title thereto. *Held, also,* that B. waived his objections to this defective allegation of the replication by taking no exception to the same and allowing the introduction of evidence thereon as fully as if the facts had been properly pleaded.

PRACTICE —*implied findings.* The judgment recites that the equities of the case are in favor of A. and there is no finding upon the issue of the estoppel. *Held,* that this action is governed by the' Civil Practice Act, approved January 12, 1872, and that this court must presume that the court below found on this issue for A.

WATER-RIGHT —*estoppel of witness and draftsman of deed conveying water.* A. purchased said mines in said basin in 1872. The deed was prepared by 'B., who also witnessed its execution, and described the property "with the water-right and ditches and other appurtenances thereunto belonging to the aforesaid mining ground." B. knew that the mines could not be worked successfully without the use of this water, and the parties talked with B. about the contents of the deed. B. knew further that the ditch and water-right were embraced in the sale and description in the deed, and did not inform A. of the claim of any person to the water. *Held,* that B. is estopped from asserting a right to the water adverse to A., and that B. should have notified A. of his claim to the water before the execution of the deed.

*Appeal from Third District, Lewis and Clarke County.*

THE action was tried before WADE, C. J.

SHOBER & LOWRY, and E. W. TOOLE, for appellant.

This is an action in equity. Appellants were in possession of the water when the action was commenced, and this should have been an action in the nature of ejectment. Equity will not interfere except in aid of such an action. Civ. Pr. Act, title Injunction; *Raffetto* v. *Fiori*, 50 Cal. 363; *Felton* v. *Justice*, 51 id. 529; *Lewis* v. *Cocks*, 23 Wall. 466.

This action, having been improperly brought, should be dismissed. The title to a water-right is measured by the same law as is applicable to land. The complaint is defective in failing to state that respondents are the owners of any particular water-right, and attempts to deraign title by alleging the building of a ditch to convey water for the special purpose of mining a certain piece of ground in Jenny's basin. The title is not deraigned from any person having a right to the water. Where an attempt is made to plead deraignment of title every fact must be averred to show a complete title against defendant where the pleading sets up title in plaintiff. *Castro* v. *Richardson*, 18 Cal. 478; *Rumsey* v. *Redell*, 9 Minn. 34.

The complaint does not set up facts which entitle respondents to take all the water and sell it. Only a special use is claimed by respondents. *Smith* v. *O'Hara*, 43 Cal. 371; *Fabian* v. *Collins*, 2 Mon. 515.

The answer has a complete defense to the action. Respondents' grantors had a license from appellants to use the water, and cannot claim a better title than those who constructed the ditch. Tyler on Ejectment, 879–80; *Irvine* v. *Adler*, 44 Cal. 559; *Luce* v. *Carley*, 24 Wend. 451; *Babcock* v. *Utter*, 32 How. Pr. 439; *Eggleston* v. *N. Y. & H. R. R. Co.*, 35 Barb. 162; *Le Fevre* v. *Le Fevre*, 4 S. & R. 241; *Hepburn* v. *McDowell*, 17 id. 383.

Appellants were the first appropriators of the water, and respondents cannot upon the facts claim that they own the water because their grantors built the ditch. The verbal license did not divest appellants of any title, and they could retake the water at pleasure. Equity will not interfere to take away a legal right from a party. 1 Story's Eq. Jur. 5; *Clinton* v. *Myers*, 46 N. Y. 511.

The only question for trial was the ownership of the water-right, and the court should not permit this to be litigated in an action for an injunction.

The replication fails to plead an estoppel and there are no findings on the subject. No fraud of appellants is shown. The deeds do not convey any particular ditches or water-rights. To constitute an estoppel, some fraud must be practiced. All the facts constituting an estoppel must be fully set out in the replication, or it is worthless as a defense. *Kinder* v. *Macy*, 7 Cal. 206 ; *Meeker* v. *Harris*, 19 id. 288 ; *McCauley* v. *Fulton*, 44 id. 355 ; *Tormey* v. *True*, 45 id. 105 ; *Brant* v. *Va. C. & I. Co.*, 93 U. S. 326.

The recital in the judgment is not a finding under the Code. Unless the findings support the judgment, it must fall. *Campbell* v. *Buckman*, 49 Cal. 362 ; *N. P. R. Co.* v. *Reynolds*, 50 id. 90 ; *Harris* v. *Burns*, 51 id. 528.

WOOLFOLK & PORTER, and SANDERS & CULLEN, for respondents.

This is a proper action. Ejectment would not be an adequate remedy. There was no interference with the ditch, but the water, which was an incident to the ditch. To prevent the diversion of the water, an injunction was the appropriate remedy. *Harris* v. *Shontz*, 1 Mon. 212 ; *Barkley* v. *Tieleke*, 2 id. 59 ; *Tuolumne W. Co.* v. *Chapman*, 8 Cal. 392 ; *Sherman* v. *Clark*, 4 Nev. 138 ; *Fabian* v. *Collins*, 2 Mon. 510 ; Civ. Pr. Act, § 129 ; Blanchard and Weeks on Mines, 749, 750.

There was no attempt to deraign title in the complaint.

The digging of the ditch under a parol license is no defense to this action. Appellants had not appropriated the water, and were mining several thousand feet below the point where respondents' ditch returns the water to Ottawa gulch, when the license was given. Appellants had the prior right to use the water where they were mining, but respondents' grantors could go above and use the water as they did, without asking appellants therefor. *Butte C. & D. Co.* v. *Vaughn*, 11 Cal. 143 ; Blanchard and Weeks on Mines, 745 ; Bouv. L. D., "License."

The parol agreement could not affect respondents, who had no notice of its existence. ·2 Am. L. C. 507 *et seq.* The authorities cited by appellants are cases where the circumstances gave notice, or no injury had resulted from want of notice.

A ditch is real estate, and appellants could not, by a parol agreement concerning the ditch, acquire any rights against appellants, who bought the ditch in good faith and without notice of the agreement. *Reed* v. *Spicer*, 27 Cal. 57 ; *Smith* v. *O'Hara*, 43 id. 371; *Barkley* v. *Tieleke, supra ;* Cod. Sts. 400, §§ 23–25 ; 402, § 34 ; 393, § 6 ; *Nelson* v. *O'Neal*, 1 Mon. 284 ; *Columbia M. Co.* v. *Holter*, id. 296.

Appellants are estopped by their conduct from pleading the license. They were present when the deeds were made and witnessed them, and gave no notice of their claim. *Godeffroy* v. *Caldwell*, 2 Cal. 489 ; *Parke* v. *Kilham*, 8 id. 77 ; *Bryan* v. *Ramirez*, id. 461.

Estoppel was sufficiently plead, but if imperfectly plead, the objection comes too late after judgment. *Hentsch* v. *Porter*, 10 Cal. 555 ; *Hallock* v. *Jaudin*, 34 id. 167.

BLAKE, J. The report of the appeal in this case from the order of the judge dissolving a temporary injunction renders needless a repetition of the facts which are stated in the opinion of the court. 2 Mon. 510. The complaint was filed April 20, 1876, and contained the following allegations: That the plaintiffs [respondents] and their grantors and predecessors in interest on and before April 19, 1876, were the owners of the Fabian water ditch, which had been constructed for the purpose of conveying all the water of Silver creek flowing in Ottawa gulch upon placer mines of plaintiffs in Jenny's basin on Jenny's fork; that they appropriated the water by means of this ditch from the date of its construction and thereby acquired a prior right to the use thereof; that while they were in the peaceable possession of the water, the defendants [appellants] wrongfully diverted the same from the Fabian ditch, by means of another ditch, which intersected Silver creek at a point above the head of plaintiffs' ditch; that the defendants have continued

to divert this water, and threaten to continue to so divert the same to the great and irreparable injury of the plaintiffs; and that the plaintiffs will be wholly deprived of the use of the water unless the defendants are enjoined from so diverting the same. The prayer of the complaint is for a preliminary injunction, and also that the injunction be made perpetual upon the final hearing.

The answer denies specifically the allegations in the complaint and alleges that Ottawa gulch was located and recorded October 4, 1864, as mineral land, and the water flowing therein, which includes that claimed by the plaintiffs, was appropriated for the use of the miners in the gulch; that the defendants have been working on their placer ground in this gulch and using the water since July 20, 1866; that long after this use and appropriation of the water by the defendants, certain parties, J. C. Loyd and others, owned placer claims in Jenny's basin on Jenny's fork of Ottawa gulch and recognized the rights of the defendants to the water; that said Loyd and others entered into an agreement with the defendants and other miners of Ottawa gulch that they would permit the water to flow down the gulch whenever the defendants and other miners wished to use the same, if the defendants and other miners would allow Loyd and others to convey the water to Jenny's basin; that Loyd and others then dug the ditch, which is claimed by the plaintiffs, under the agreement and were not to have any right to the use of the water as against the defendants and other miners in Ottawa gulch; that this was a personal license in favor of Loyd and others, who are the owners of the Fabian ditch, and that the ground in Jenny's fork, on which Loyd and others had the license to use the water, has been wholly worked out; and that the defendants require the water to mine their placer ground in Ottawa gulch, and committed the injuries complained of by the plaintiffs in constructing a reservoir in the gulch above the mouth of Jenny's fork.

The replication denies every allegation in the answer and alleges that the defendants are estopped from asserting the agreement " for the reason that said defendants were present at the time and date of the purchase by plaintiffs of said ditch and water-right from their grantors, and did not notify these plaintiffs of

the existence of any such agreement;" that the plaintiffs had no notice of this agreement at the date of their purchase ; and that the mining ground in Ottawa gulch above the mouth of Jenny's fork remained vacant for a long period after the Fabian ditch had been constructed and the water had been appropriated by the grantors of the plaintiffs.

At the trial, sixteen special findings were submitted to the jury and the following facts were established by the verdict thereon : 1. That the defendants or their grantors appropriated the water of Ottawa gulch prior to the time that Loyd and others constructed their ditch from this gulch to Jenny's basin. 2. That the parties who constructed the Fabian ditch made the agreement with the defendants and other miners, which is contained in the answer. 3. That the plaintiffs did not have any notice of this agreement when they purchased the ditch of Loyd and others. 4. That the plaintiffs were first notified of this agreement in the summer of 1874. 5. That Loyd and others and the defendants and others were the parties to this agreement. 6. That it was under this agreement that the parties who constructed the Fabian ditch were permitted to use the water of Ottawa gulch through their ditch. 7. That the parties to the agreement owned, at the time it was made, claims numbered from thirty to thirty-seven inclusive in Ottawa gulch, and that other miners then owned claims numbered from thirty-eight to forty-one inclusive; that claims numbered from thirty to thirty-nine were below the junction of Jenny's fork with the gulch, and the claims numbered forty and forty-one were at and above the junction. 8. That the defendants were owners of claims in the gulch and mining there at and before the construction of the plaintiffs' ditch, and that the defendants are miners and claim owners in the gulch, and the water of the gulch is necessary to mine successfully their ground. 9. That the defendants have mined their claims in this gulch since 1866. 10. That the plaintiffs hold and own their ditch by purchase from the original owners and constructors. 11. That it is necessary to reservoir the water in Ottawa gulch to work successfully the claims therein. 12. That a reservoir could be constructed at the junction of Jenny's fork with Ottawa gulch.

13. That a reservoir so constructed would not enable the miners to work out all claims that were owned by the parties to the agreement at the time it was made.    14. That this agreement was verbal.    15. That the water of Ottawa gulch was used at the time of the sale of the mining claims in Jenny's basin by Loyd and others to the plaintiffs, and that this water was necessary to mine the claims.    16. That the defendants, before the commencement of this action, diverted the water of Ottawa gulch from plaintiffs' ditch.

No exceptions were taken to the findings of the jury, and each party moved for judgment upon the pleadings, evidence and findings.    The court rendered a decree that the preliminary injunction be made perpetual, but reserved for the defendants the right to take the water flowing through plaintiff's ditch below the mining ground of the plaintiffs in Jenny's basin.    The preliminary injunction restrained the defendants from diverting from the plaintiffs' ditch the water flowing down Ottawa gulch.

The appellants claim that the respondents cannot obtain equitable relief under the pleadings, and that an action in the nature of ejectment would afford a legal remedy.    The following cases are cited in support of this position : *Lewis* v. *Cocks*, 23 Wall. 466 ; *Raffetto* v. *Fiori*, 50 Cal. 363 ; *Felton* v. *Justice*, 51 id. 529. In *Lewis* v. *Cocks*, *supra*, Cocks filed a bill in equity praying that the defendant might be decreed to execute a deed for two houses and lots on receiving the price paid for the same by the defendant.    The court held that there was no fraud in the case, or any other matter which is specially the subject of equitable jurisdiction ; that the bill was not the proper means to recover the possession of land of which Cocks was out of possession ; and that " an action of ejectment is an adequate remedy."    In *Raffetto* v. *Fiori*, *supra*, an action of trespass was brought in May, 1873, to recover damages and obtain an injunction, and it was one of the findings that the defendants had been in the possession of the land since August, 1870.    The court held that this action could not be maintained where the plaintiff is actually disseized of the land and the defendant is in the adverse possession thereof.    In *Felton* v. *Justice*, *supra*, the complaint alleged that

the defendants forcibly ousted the plaintiffs from the possession of the plaintiffs' ditch, on the plaintiffs' rancho, and converted to their use the water flowing therein, and threatened to continue the trespass.   The court approved the case of *Raffetto* v. *Fiori*, *supra*, and held that a court of equity will not restrain the commission of threatened trespasses by the defendants, who are in the adverse possession of land, when the plaintiffs are totally disseized.

In the case at bar, the appellants did not disturb the respondents in the possession of the Fabian ditch, but diverted the water which was an incident to the ditch.   We are aware of some rules which are applicable alike to land and water, and that in a legal sense, property in a water-course is comprehended under the general name of land, and that a grant of land conveys to the grantee the water which flows naturally over the surface.   But we have not seen any case in which the doctrine of the foregoing decisions, relating to the remedy for the recovery of the possession of land, has been applied to a controversy respecting the prior right to the use of water.   On the contrary, many judgments in the courts of the States and Territories, in which the work of mining for the precious metals is pursued under the same conditions which exist in this Territory, have been entered and affirmed in actions in which the complaint was in substance the same as that under consideration and the equitable relief of an injunction has been granted in favor of a party who was not in the possession of the water when the suit was commenced.

The appellant insists that the supreme court of California in the case of *Felton* v. *Justice*, *supra*, recognized the rule that the law which governs the right to the possession of land applies also to the right to the use of water.   This is not our view of the principle which is upheld in the opinion in which the court says : "The purpose of this action is to enjoin the commission of trespasses upon lands alleged to be the property of plaintiffs.   The plaintiffs allege that the defendant had entered upon the lands, and ousted and removed plaintiffs therefrom."   We think that the court, in using the term "lands," referred to the rancho and ditch thereon, and did not include the water-right.   It must be

admitted that the brevity of the opinion on this point makes its meaning a fair subject of criticism, and we may have misunderstood the case. Conceding that the appellants are correct in their interpretation of this decision, we are satisfied, by an examination of the authorities, that the complaint of the respondents states a good cause of action and prays for appropriate relief.

Mr. Yale, in considering remedies for the diversion of water, says: "Actions for injuries to water-rights are three fold: 1. By an action for damages in using or diverting the water, which sounds only in damages, or in assumpsit for so much water used, under a contract, express or implied. 2. By an action for a perpetual injunction to restrain the further use of the water, upon the ground of irreparable injury. 3. By an action in the nature of a proceeding to abate a nuisance, when an impediment or obstruction has been created to prevent the flow of water in its natural course. The cases in our courts furnish numerous instances of actions of each description. * * * The injunction is but a provisional remedy, and but an incident to the action, or it may be the sole purpose of the bill." Yale on Mining Claims and Water-Rights, 213. This commentator has defined clearly the law upon this subject. In a majority of the cases that we have examined, the aggrieved party asks for damages and an injunction, but the allegations of the facts which are essential to secure the equitable relief are similar to those of the complaint in this case. The omission or denial of the prayer for damages does not affect the right to an injunction. In *Tuolumne W. Co.* v. *Chapman*, 8 Cal. 392, the complaint is the same as that of the respondents, and the judgment of the court below in overruling a demurrer thereto is affirmed, and it is held that the "continued diversion of water from a party entitled to it is such an irreparable injury as a court of equity will redress." In *Parke* v. *Kilham*, 8 Cal. 77, it is held that "a ditch to carry off water rightfully flowing to a mining claim is as much a nuisance as a dam to flood the premises." These decisions are based upon the well-settled principle that courts of equity will always interfere by injunction when irreparable injury will be caused by the obstruction of a water-course or the diversion of water. 2 Story's

Eq. Jur., §§ 926, 927; Angell on Water-courses, §§ 444–447. The complaints in the cases of *Wilkins* v. *McCue*, 46 Cal. 656, and *Covington* v. *Becker*, 5 Nev. 281, are the same in substance as that before us, and an injunction is the sole relief that is sought. In *Higgins* v. *Barker*, 42 Cal. 233, the plaintiff asked for damages and an injunction and the court granted the injunction and refused to allow any damages. In *Lake* v. *Tolles*, 8 Nev. 285, the prayer of the complaint was for the title to the use of the water, damages for its past diversion and an injunction, and a decree was entered for the plaintiff and damages in the sum of one cent. The court held that "the complaint was purely equitable * * * save so far as it showed and prayed damage." In *Barnes* v. *Sabron*, 10 Nev. 217, Mr. Chief Justice HAWLEY says: "The rule of law is, that in cases for the diversion of water, where there is a clear violation of a right and equitable relief is prayed for, it is not necessary to show actual damage; every violation of a right imports damage; and this principle is applied wherever the act done is of such a nature as that by its repetition or continuance it may become the foundation of an adverse right." The courts of this Territory have adhered to the rules which have been enforced in the States of California and Nevada. *Caruthers* v. *Pemberton*, 1 Mon. 115; *Harris* v. *Shontz*, id. 212; *Toombs* v. *Hornbuckle*, id. 286; *Columbia M. Co.* v. *Holter*, id. 296; *Gallagher* v. *Basey*, id. 457; *Barkley* v. *Tieleke*, 2 id. 59. In *Harris* v. *Shontz*, *supra*, a perpetual injunction was decreed, but no damages were assessed for the diversion of the water. In *Columbia M. Co.* v. *Holter*, *supra*, it was held that the plaintiff was entitled to nominal damages and a perpetual injunction to restrain the defendant from diverting the water. In *Gallagher* v. *Basey*, *supra*, the prayer of the complaint is for an injunction to restrain the defendant from the use of the water and judgment was entered for the plaintiff. In *Barkley* v. *Tieleke*, *supra*, which was an action involving the prior right to the use of water, Mr. Justice SERVIS says: "The defendants insist, that before relief can be had under the claim made by plaintiff, he must resort to an action at law to settle the legal title to the property in question. * * * Upon a review of the authorities, we are

satisfied that chancery is a well-defined remedy for relief in an action in the nature of a nuisance, of which this clearly partakes, without resort to an action at law. In fact, equity seems to be the only appropriate remedy to afford relief in cases like the one under consideration." The case of *Atchison* v. *Peterson*, 1 Mon. 561, was appealed to the supreme court of the United States, and Mr. Justice FIELD, in delivering the opinion affirming the judgment, says: "In all controversies, therefore, between him (the first appropriator) and parties subsequently claiming the water, the question for determination is necessarily whether his use and enjoyment of the water to the extent of his original appropriation have been impaired by the acts of the defendant. But whether, upon a petition or bill asserting that his prior rights have been thus invaded, a court of equity will interfere to restrain the acts of the party complained of, will depend upon the character and extent of the injury alleged, whether it be irremediable in its nature, whether an action at law would afford adequate remedy, whether the parties are able to respond for the damages resulting from the injury, and other considerations which ordinarily govern a court of equity in the exercise of its preventive process of injunction." 20 Wall. 515.

The appellants contend that they have been deprived of a trial by a jury of the right to the use of the water in controversy, and that the court below erred in submitting only the findings that it deemed proper, and basing its decree thereon. The conclusions that we have announced regarding the sufficiency of the complaint, the equitable character of this action, and the remedy of the respondents, determine these objections. This is a case in equity in which a jury trial cannot be claimed as a right by the parties. *Kleinschmidt* v. *Dunphy*, 1 Mon. 118. In *Lake* v. *Tolles, infra,* the ruling of the court below in refusing to try the issues by a jury was affirmed. The case of *Gallagher* v. *Basey, supra,* in which the court disregarded some of the special findings of the jury in rendering its decree, was appealed to the supreme court of the United States, and Mr. Justice FIELD, in the opinion affirming the judgment of this court, says: "If the remedy sought be equitable, the court is not bound to call a jury, and if

it does call one, it is only for the purpose of enlightening its conscience, and not to control its judgment. * * * Some-times in the same action both legal and equitable relief may be sought, as for example, where damages are claimed for a past diversion of water, and an injunction prayed against its diversion in the future. Upon the question of damages, a jury would be required; but upon the propriety of an injunction, the action of the court alone could be invoked." 20 Wall. 680.

The next matter for our consideration is the effect of the agreement, which is referred to in the pleadings and findings, upon the rights of the appellants and respondents. Loyd and the other persons who constructed the Fabian ditch and were the grantors and predecessors in interest of the respondents, had the personal license of diverting and using the water of Ottawa gulch upon their mining claims in Jenny's basin during the time that the appellants and other miners did not need the same for the working of their ground in Ottawa gulch. No interest in land was thereby conveyed or created, and the agreement was valid between the parties, although it was not reduced to writing and put upon the records of the mining district or the proper county. Afterward, Loyd and his partners expended money and labor in digging their ditch and making other improvements which were necessary to mine their property in Jenny's basin. By asking for and obtaining the privilege of using the water in controversy for this particular purpose under the foregoing conditions, Loyd and his associates recognized the prior appropriation thereof by the appellants. The legal relations of the parties were the same as those of landlord and tenant. The doctrine of the tenant's estoppel would prevail against Loyd and his company, when they were in the possession of the water under the license, and the prior rights of the appellants could not be disputed. Bigelow on Estoppel (2d ed.), 359, 381, and cases there cited. But this privilege, which was acquired under the license or agreement, was limited strictly to the original parties, and could not be sold and transferred to the respondents by Loyd and the other licensees. 2 Am. L. C. (4th ed.) 736, and cases there cited; Washb. on Ease. (2d ed.) 8; Browne on Statute of Frauds (2d ed.), § 22; *Babcock* v. *Utter*, 32 How. Pr. 439.

It appears that the water has been used upon the mines in Jenny's basin since 1867, without injury to the claim-holders of Ottawa gulch, until the appellants were working at a point which made necessary the construction of the reservoir that is mentioned in the answer, and this action was commenced. The respondents maintain that their grantors appropriated the water when the Fabian ditch was located and surveyed, but we think that the appropriation by the respondents must date from the time when they took possession of the ditch in 1872. *Smith* v. *O'Hara*, 43 Cal. 371. The appellants were the prior appropriators of the water, and their interests could not be destroyed or forfeited by the omission to make a record of the agreement, or the ignorance of the respondents concerning it when they bought their property of Loyd and others. At any time the appellants could revoke this license. 1 Washb. Real Prop. 400, and cases there cited; *Babcock* v. *Utter, supra ;* Washb. on Easements (2d ed.), 23, and cases there cited.

The following question is decisive of this case : Are the appellants estopped from claiming the water of Ottawa gulch, as against the respondents, by their conduct at the times when three deeds were executed and delivered by Loyd, Moss and Riley to the respondents ? The appellants are correct in their position that the replication fails to set forth all the facts which constitute an equitable estoppel. It does not allege that the respondents were influenced in buying the property of Loyd, Moss and Riley by the conduct of the appellants, or that the respondents had no convenient means of acquiring knowledge of the true state of the title to the water of Ottawa gulch. It therefore does not appear from this pleading that the respondents have been injured by any intended deception in the conduct of the appellants, or gross negligence on their part which amounts to constructive fraud. 1 Story's Eq. Jur. (9th ed.), § 391, and cases there cited; *Brant* v. *Virginia C. & I. Co.*, 93 U. S. 326, and cases there cited; *Sharon* v. *Minnock*, 6 Nev. 377 ; Bigelow on Estoppel (2d ed.), 437 ; *Davis* v. *Davis*, 26 Cal. 23. The appellants did not raise this question in the court below, and took no exception to the replication, and allowed evidence to be pro-

duced on the trial in the same manner as if the facts constituting the estoppel had been properly pleaded, and thereby waived the defects in the pleading. *Davis* v. *Davis, supra.*

The decree states that the equities of the case are in favor of the respondents, and the appellants insist that the judgment cannot be supported because there is no special finding upon the issue of estoppel. The decisions, which are relied on by the appellants, were made under the Code of Civil Procedure of the State of California, which changed the rule relating to implied findings of facts. *Campbell* v. *Buckman*, 49 Cal. 362; *N. P. R. Co.* v. *Reynolds*, 50 id. 90; *Harris* v. *Burns*, 51 id. 528. This action must be governed by the Civil Practice Act, approved January 12, 1872, and we must presume, unless the contrary appears, that the court below found on this issue for the party for whom the judgment was entered. *Ming* v. *Truett*, 1 Mon. 322; *Morse* v. *Swan*, 2 id. 306; *Ervin* v. *Collier, ante*, 189.

The transcript contains the following evidence upon this point: We omit that which sustains the special findings of the jury. The respondents bought some mining claims in Jenny's basin and received their deeds from Riley, Moss and Loyd, which were dated, respectively, October 10, 1872, October 11, 1872, and September 21, 1873. The deeds described the ground " with the water-right and ditches and other appurtenances thereunto belonging to the aforesaid mining ground." Collins, one of the appellants, signed his name as a witness to the execution of the deeds by Riley and Moss, and Mayger, the other appellant, was a witness to the execution of the deed by Loyd, and, as the recorder of the mining district, placed upon the records the deeds from Riley and Moss. The appellants knew that these mining claims could not be worked successfully without the water of Ottawa gulch, and that the Fabian ditch and this water were included in the ditches and water-right mentioned in the deeds to the respondents. The deeds were drawn up by Mayger in the presence of Collins, who knew that the sale was being made, and the grantors and respondents consulted with Mayger respecting the contents of the deeds. Neither Collins nor Mayger informed the respondents of any claim by any persons to the water in dis-

pute. Do these facts uphold the implied finding of the court on the issue of estoppel, or does the contrary appear therefrom? Was it the duty of Collins and Mayger to keep silence or speak out concerning their right to the water of Ottawa gulch when the deeds were executed to the respondents? The respondents could gain no knowledge of the state of the appellants' title by an examination of the records of the mining district and county in which the property is situated, which is often the convenient means of ascertaining a fact of this kind. The respondents acquired by their purchase the possession of the water, which had been used by their grantors more than five years without interruption, and could presume reasonably that this use had been rightful.

In *Hale* v. *Skinner*, 117 Mass. 474, Mr. Chief Justice GRAY refers to " the doctrine of courts of equity that a person witnessing or present at the execution of a conveyance of property by another is estopped afterward to set up title in himself." Mr. Bigelow, in his work on Estoppel, says : " Thus the witnessing of a deed to one's own land, done knowingly, for a grantee in ignorance of the witness's rights, will (at least in equity) estop the witness to set up against the grantee a claim to the land existing in the witness when the deed was executed." Bigelow on Estoppel (2d ed.), 451, 471, and cases there cited. Mr. Story says in his Commentaries on Equity Jurisprudence : " In many cases a man may innocently be silent. * * * But, in other cases, a man is bound to speak out ; and his very silence becomes as expressive as if he had openly consented to what is said or done, and had become a party to the transaction. * * * So, if a man should stand by, and see another person, as grantor, execute a deed of conveyance of land belonging to himself, and, knowing the facts, should sign his name as a witness, he would in equity be bound by the conveyance." Story's Eq. Jur. (9th ed.), § 385. In *Gregg* v. *Von Phul*, 1 Wall. 274, Mr. Justice DAVIS says : " No one is permitted to keep silent when he should speak, and thereby mislead another to his injury. If one has a claim against an estate and does not disclose it, but stands by and suffers the estate [to be] sold and improved, with knowledge

that the title has been mistaken, he will not be allowed afterward to assert his claim against the purchaser. And justly so, because the effect of his silence has actually misled and worked harm to the purchaser." We might cite other authorities in support of these propositions. 1 Greenl. on Ev. (12th ed.), § 207 ; Angell on Water-courses (6th ed.), § 328 ; *Chapman* v. *Chapman*, 59 Penn. St. 214 ; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 354 ; *Niven* v. *Belknap*, 2 id. 573 ; *Brown* v. *Bowen*, 30 N. Y. 520 ; *Henshaw* v. *Bissell*, 18 Wall. 255.

The application of these principles to the facts before us compels us to conclude that the appellants should have asserted their claim to the water of Ottawa gulch when the deeds were executed by Moss, Riley, and Loyd; and that their conduct and silence at that time estop them from speaking in this action against the respondents. The respondents could not buy from their grantors any title under the parol license, conferred by the appellants, and were induced to pay Moss, Riley and Loyd for what they did not own. The appellants acted with a full knowledge of their rights, when the respondents were in ignorance regarding them and without convenient means of acquiring information.

The judgment protects with a just discrimination the rights of the parties and is affirmed with costs.

*Judgment affirmed.*