# LEHI IRRIGATION COMPANY, APPELLANT, *v.* STEPHEN MOYLE, ET AL., RESPONDENTS.

NEW TRIAL.—DECISION AGAINST EVIDENCE.—A new trial will not be granted on the ground that the evidence is insufficient to justify the decision if there is a substantial conflict of evidence.

COMMUNITY CONTRACTING.—ACTING THROUGH PUBLIC MEETINGS.— When a contract is made with individuals in behalf of a small community by a committee purporting to act for them and when such action has been ratified by the community in a public meeting, the contract becomes binding on such community.

IRRIGATION DITCH.—ENLARGEMENT OF BY OTHERS THAN OWNERS.— The persons who build an irrigation ditch upon the public land of the United States become the owners thereof, and of the right to use the water first appropriated thereby, so long as they use the same for irrigating purposes, and to the extent of such appropriation; but when such ditch is enlarged by others, the original owners not objecting, and its capacity increased, the parties so enlarging the ditch become owners therein and in the water appropriated thereby without any conveyance from the original owners.

ID.--ESTOPPEL IN PAIS.—An owner of an irrigating ditch upon the public land of the United States, who, without objection, sees others enlarge and repair his ditch, increase its capacity, take up lands in its vicinity which could be irrigated only through his ditch, and make improvements thereon on the faith of obtaining water through his ditch to the extent of its increased capacity, is estopped to deny the right of such parties to so use such ditch.

ID. -ESTOPPEL BY RECORD.—In a suit brought by an irrigation company to enjoin numerous parties from interfering with a certain ditch, the record of a former suit brought by plaintiff's grantors against some of the same parties for the same purpose and in which only a part of the relief asked was obtained, is admissible in evidence against the plaintiff.

APPEAL from a judgment of the district court, of the first judicial district, and from an order refusing a new trial. The opinion states the facts.

*Messrs. Sheeks & Rawlins, and Mr. S. R. Thurman,* for the appellant.

A ditch constructed and used as this was, is private property, belonging to those who constructed it, and their suc-

cessors in interest: it is not public property: U. S. Rev. Stats., sec. 2339; *Atchison* v. *Peterson*, 20 Wall., 507; *Basey* v. *Gallagher*, 20 Wall., 670; *Jennison* v. *Kirk*, 98 U. S., 453; *Broder* v. *Water Co.*, 101 U. S., 274; *Trippe* v. *Overacher*, 1 West Coast Rep., 352.

The ditch, with the right to its use, is not a mere easement. It is land, and must be transferred by deed: 2 West Coast Rep., 2-3; *Reed* v. *Spicer*, 27 Cal., 57; *Smith* v. *O'Hara*, 43 Cal., 371; 22 Am. Rep., 533.

There was nothing in the conduct, action or lack of action on the part of plaintiff, or its predecessors in interest, to estop it from now asserting its right. There was no contract, fraud or misrepresentation. Neither was there any such acquiescence as should estop plaintiff: Pomeroy's Eq. sec's. 805, 806, 807, 808, 809, 810, 811, 812, 818 and 821; Bigelow on Estoppel, 484, 490; *Woodruff* v. *North B. G. M.*, 1 West Coast Rep., 183; *Anaheim Water Co.* v. *Semi Tropic Water Co.*, 64 Cal., 185; *Trenton Banking Co.* v. *Duncan*, 86 N. Y., 221-230.

*Mr. Arthur Brown and Mr. A. G. Sutherland*, for the respondents.

The right to convey water over another's land is a mere easement: 53 Cal., 140; Yale, 202-209; 101 U. S., 276.

Congress has excepted from all patents the right of a water way. This was but a mere declaration on the part of Congress of the prior customs existing upon the Pacific Coast, and it was the crystallization into the statute law of that which had before been the common law of this part of the country: 101 U. S., 276; *Bassey* v. *Gallagher*, 20 Wallace; Sabron Case, 10 Nev., 217.

What has been the custom and local law prior to that act? What rights did each of the parties have towards each other? Look at this from its standpoint without the statute. We must remember the history of this country. Land was nothing—water was everything. He who first took water was therefore supposed and held by adjudication to have the right to it in whatever form or manner he appropriated it.

But his appropriation was only to the extent and for the time to which he used it: 30 Cal., 39; 20 Wall., 515; 24 Cal., 302; 13 Cal., 30; 3 Mont., 215; 14 Nev., 170.

The plaintiff is estopped from asserting any right against the occupants of land watered by the Alpine ditch, for the reason that it and its grantors has permitted them to go on and do work on the faith of an understanding that they would receive water for that work, thus constituting an equitable estoppel: *Dickerson* v. *Colgrove*, 10 Otto; 3 Mont., 229.

BOREMAN, J.:

This is an action brought by the appellant, the Lehi Irrigation Company, to have the respondents, Stephen Moyle, et al., enjoined and restrained from using, tapping, or otherwise interfering with a certain irrigation-ditch, so as to prevent the water, and all the water, from flowing therein. The trial was by the court, and judgment was given for the respondents. A motion for a new trial having been made and overruled, the appellant brought the case to this court, by appeal from the judgment and from the order overruling the motion for a new trial. The appellant claims that the motion for a new trial, made by it in the lower court, should have been sustained, and the main reason urged therefore is that the findings of fact are not sustained by the evidence.

The issues in the lower court were chiefly regarding the right of the respondents to use the Lehi irrigation-ditch for transporting water from the American Fork canyon to their lands. Motions for new trials are always addressed to the sound discretion of the court, and whether granted or denied, the discretion of the trial court will be presumed to have been properly exercised, and will be so held unless the contrary be made clearly to appear. It is a general rule that the findings of a trial court should not be disturbed, unless the preponderance of evidence against them be apparent, and so marked that the appellate court can plainly see that the findings are against the evidence. If there is a substantial conflict of evidence, we have no

right to reverse the decision: *Harrington* v. *Chambers*, 3 Utah, 94; *Newton* v. *Brown*, 2 Id. 126; *Firman* v. *Bateman*, Id., 248; *Walker* v. *Popper*, Id., 281; *Dewey* v. *Snider*, Id., 344; *Lubeck* v. *Bullock*, 24 Cal., 338; *Rice* v. *Cunningham*, 29 Id., 492; *Wilkinson* v. *Parrott*, 32 Id., 102; *McNeil* v. *Shirley*, 33 Id., 202.

The appellant claims exclusive ownership of the ditch in question, and exclusive use and right to use the same. The respondents deny the claims of appellant, and assert in themselves a right to the use of the water and of the ditch so far as they have appropriated the same in excess of the amount, or outside of the time, used by appellant or its grantors when respondents settled on their lands.

The court below made ten findings of fact. To six of these the appellant files his exceptions, namely, to numbers 1, 2, 4, 5, 9, and 10. The exceptions are generaly not made to the whole of any one of theses findings, but to some specific part or parts thereof.

The objectionable part of the first finding is the declaration "that the said ditch was built for the purpose of irrigating the Lehi big field, and for the common accomodation of the citizens who had settled, or should thereafter settle, at Lehi, or in the vicinity, or along the path or course of said ditch." While perhaps no witness testified directly that the ditch was built with such avowed object, yet facts were proven from which the court could justly draw that conclusion. Evidence is not always the testimony of a witness, but is sometimes the effect of testimony. A witness may assert or deny an alleged fact, and yet detail circumstances which will show the very contrary.

The ditch in question, as first made and as afterwards enlarged and changed, was for certain purposes. What these are is to be learned from the declarations, acts, and general course and conduct of the builders.

The primary object of the ditch, no doubt, was to carry water to the lands of the thirty-one or thirty-two original settlers situate in the Lehi big field, but it as plainly appears from the evidence that this purpose was afterwards modified, expanded, and added to. The ditch was allowed to supply

water to lands in the big field other than those owned by
the thirty-one or thirty-two first settlers, but belonging to
parties settling there subsequently to them; and it was
made also to furnish water to lands and settlers outside of
the big field and outside of Lehi settlement. Along the
Matthews ditch alone, which receives its waters from the
Lehi ditch, there are lands thus watered, which belong to
some twenty-five persons who are, in the same manner as
settlers inside the Lehi settlement, allowed the benefits and
use of the ditch. Those parties are now members of the
corporation and their interests are represented by the ap-
pellant.

The first witness for appellant testified that the business
of the corporation has been to distribute the waters "to the
inhabitants and those that we acknowledge to have
rights." This indicates that appellant does not confine
the use of the ditch to the primary object.

There is evidence going to show that the new settlers in-
side the Lehi settlement, upon their arrival, were allowed
to have the use of the water and an interest in the ditch
without question. They simply united with the other set-
tlers in working upon and enlarging the ditch. Such part-
ies are now represented by the appellant—they are in-
cluded in the company. No deeds seem to have passed
from the original thirty-one or thirty-two settlers to those
later settlers. They were admitted by tacit consent; no
deeds were necessary. These later settlers helped to
make the ditch as it is now found.

There is evidence to show that in all things regarding
the ditch and the water, the Lehi people were accustomed
to act together as a community and not as separate indi-
viduals. That they generally acted or were represented
by their bishop or by public meetings, by committees,
water boards, watermasters, etc. They sent a committee
to arrange with the Alpine people for a right of way for
a new Alpine ditch to constitute a part of the main ditch;
that said arrangement was made and the action of the
committee was approved in public meeting by the Lehi
people; that Bishop Evans, as spokesman and representa-
tive of the Lehi people, gave express permission to

Stephen Moyle and John Poole to use the water from the
ditch at particular times; that John Poole was admitted
into the company, although he afterwards withdrew; that
the settlers on the bench generally, including the respond-
ents, were invited to join the company.  At first, the set-
tlement was small, and the ditch was accordingly small.
Subsequently the settlement grew, the numbers increased,
and the amount of land subject to irrigation increased,
and, of course, the flow of water was increased to meet
the increasing demands.  In 1877 the number of settlers
had increased to over two hundred, and the appellant is
now representing over two hundred, who reside, inside
and outside, but mostly inside, the Lehi settlement.

The respondents all live outside, on lands lying between
Lehi and the mouth of the American Fork canyon, and
receive water upon their lands by side-ditches from this
Lehi ditch, which extends from the mouth of the canyon
to the Lehi big field, a distance of over three miles.  The
respondents seem to have followed the example of other
settlers who had arrived before them, and took up lands
and appropriated water and worked on the ditch in the
same manner.  There is no evidence that any had been
excluded, nor was there any objection by the settlement,
as a whole, to their using the water and the ditch, the pri-
ority of right in the prior settlers being always recog-
nized.  These, and similar matters, show clearly to our
minds that the purpose of the ditch did not remain sta-
tionary, but was expanded, changed, and modified, so as to
suit the changing condition of affairs, and that there was
never any purpose to exclude new settlers from the bene-
fits of the ditch and water, but that the general design—
and the whole history of the ditch and settlers shows it
—was that all settlers, so long as there was surplus water,
were to be admitted to the benefits of the ditch, by their
joining in with prior settlers in enlarging the ditch and
the flow of water and in doing the annual work neces-
sary to keep the ditch in repair.

The second finding of fact is objected to because it
states that, until 1881 the citizens of Lehi used the ditch
for irrigating purposes for late water only—that is, after

about July 1 and before October 1 of each year. No stress is laid upon the latter date, because, perhaps, as stated by Stephen Moyle, that even in September the water was so low as to be sufficient only for culinary purposes. Respecting the first date, namely, about July 1, Stephen Moyle states that, "we always agreed about early water, that is, up to the middle of July; after that they objected to us taking it. They did not object to our taking early water." He afterwards, when recalled as a witness, said, "I have reference to early water, which I consider lasts until the latter part of June. Never was any dispute as to my right to use the ditch." W. H. Winn, the first witness for appellant, testified that he used the American Fork water "for late crops," and he seems, from his language, not to have used it prior to July until 1882, when he thinks he used it in June. Israel Evans, witness for the appellant, says that they "had commenced as early as May," but that "the usual habit has been to commence using American Fork water along in June." John Hagan, a witness for the respondents, states that he heard Israel Evans, one of the Lehi parties, testify on a trial of another case that the Lehi people never needed the water of the ditch before the fifteenth or twentieth of July. Ephraim Nash, a witness for respondents, states that he did not use the water "after Lehi actually needed it, after the first of July." George Magas, a witness for respondents, says that he divided the water for the Alpine ditch with the Lehi watermaster "after first of July."

Meyers also states that he always had early water, and that they never tried to take it away. Israel Evans, a witness for the appellant, when recalled for the respondents, says that it was generally known in Lehi after the spring of 1876 that the respondents used early water—that it was talked of in public meetings—but no objections were made. Hiram Heely, a witness for respondents, testified that they—the "bench" people—did not claim any amount of water after the first of July. Milton Goodrich, a witness for respondents, states that there was generally water running in the side-ditch from which he took water, up to the first of July, and that after that date he under-

stood the Lehi people wanted it, and that up to that date no objection was ever made. These samples of the testimony show that the court below had evidence upon which to base this finding that "about the first of July" the appellant and its predecessors began to use the water from this ditch. The judgment in the case of *Ellington, etc.* v. *Poole, et al.*, introduced in evidence, bears out the same idea; and the same fact crops out in other places throughout the evidence.

The other branch of this second finding is also objected to, which reads as follows: "That after the original building of said ditch the waters thereof were granted by the custom of the settlers and original appropriators to all new settlers at Lehi or in the vicinity, or along the line of said ditch, up to the time of the commencemant of this action." The word "custom" was perhaps not a happy one in this connection, as it is sometimes used in the sense of giving title, but we do not think such to be the purport of the word as here used. It is true that it says the "waters thereof were granted by custom of the settlers," etc. But if its meaning was to give title it would be a conclusion of law and not a finding of fact—it would amount to declaring it a usage which had acquired the force of law. Such evidently was not the sense of the word here, but it was intended as a finding of fact that a habit had grown up that all persons making settlements on lands that could be irrigated by the waters of this ditch were allowed to use it, and thus any new settlers would not be compelled to get an express grant in his favor, but could assume that, although this habit would not give him title, yet it could be shown as evidence of tacit consent of the settlers to the use of the ditch and water by the new settlers. All of the parties, both inside and outside, of the Lehi settlement, represented by the appellant, except the original thirty-one or thirty-two, had acquired the right to use the water and ditch by said tacit consent, followed up by joining in with the older settlers in working upon, enlarging, and clearing the ditch. Other parts of the evidence support the finding in the sense of its being a fact found and not a conclusion of law.

The appellant excepts to the fourth finding of fact, because of the statement therein that the use of the water from the Lehi ditch by John Poole and other respondents was without objection on the part of the appellant or its grantors for early water, and because of the statement that Poole's right to some interest in the ditch was recognized by putting his name in the articles of incorporation.

As to the former part of this exception—the part respecting objection on the part of the appellant—there is evidence, both for and against the existence of said objection, and it is not our province, on this finding or any other one, to decide whether the evidence is the stronger on the one side than on the other.   We are simply to find whether there is a substantial conflict in the evidence, and if there is, we can do but one thing, uphold the finding; otherwise, not.   John Poole, in his examination as a witness, states that some of the work he did on the Lehi ditch was at the request of the Lehi watermaster and, of course, with his knowledge.   That William Bone, the Lehi watermaster, brought him a written notice that he was not to interfere with the Alpine ditch (a side-ditch), but he received no such notice as to the Lehi ditch; that Bone saw him at work in different years; that he (Poole) suggested to Bone that he (Poole) take the portion of the ditch running through his own land and keep it in repair for his share of work on the ditch; that Bone said that that would be more than Poole's share would come to, but that it was all right; that he (Poole) worked under the direction of Matthews, sub-watermaster; that Matthews notified him to come to work; that he received written authority, purporting to come from the Lehi water board, to act as watermaster, and that he worked with Matthews; that the greater part of the work he did was in the presence of the Lehi people; that he is one of those who built about six rods of new ditch after the washout at the head of the ditch in 1881; that the Lehi people have accepted and used this new part of the ditch, knowing that he and other "bench" men built it, and that the Lehi watermaster, Hampstead, said he·was glad that they built it, as he could not

get the Lehi men to do it; that he is the Poole whose name appears in the articles of incorporation of appellant, and that his signature is affixed to the articles; that he signed the articles with the understanding that his rights would be respected, but when he learned that he was to take a secondary place, he refused to belong to the company; that all the "benchers" were invited into the corporation.

David Evans was formerly bishop at Lehi, and represented the people there, and he says that he gave Poole, Stephen Moyle, and others permission to take water from the ditch when Lehi people did not need it. Israel Evans, a Lehi man, says that the taking of the water by the respondents was generally known at Lehi, and he is positive that it was so known after the spring of 1876; and although the matter was on different occasions referred to in public meetings of the Lehi people, there was no objection made to their using early water. The objections now and then made by individual citizens of Lehi to certain individuals amongst the respondents taking water from the ditch, could inure to the benefit of no one not represented by such objecting party; nor could such an objection amount to an objection to all respondents, or to any not thus objected to. Unless all, either by themselves or by some one representing them, objected to an individual respondent's use of the water or ditch, the whole cannot claim the benefit of said objection to an individual respondent. And when any such objection is made by, or on behalf of, the whole number and against individual respondents, it can only avail against such respondents as were objected to. If a case of objection could be made out in favor of some of the grantors of appellants, and against some of the respondents, it would be no reason for granting an injunction in favor of all grantors of appellant, nor against all respondents. Nor can the fact that all of the grantors are united in a corporation change the requirement, but it remains as if no corporation existed.

The finding as to Poole being recognized to have some right or interest, by the fact that his name was inserted in the articles of incorporation, is possibly more a conclusion of law than a finding of fact. As there is no evi-

dence that any one not having a water-right or right in the ditch was admitted as a member of the company, we are inclined to think that, as a fact, the parties forming the company intended to recognize Poole as a proper party to belong to the corporation. Had they not so intended they would not have had any reason for admitting him into the company as one of the incorporators.

The appellant excepts to the fifth finding of fact, because it states that the capacity of the ditch had been doubled ·since the settlement by the respondents was made. The respondents all ·settled on these lands between 1873 and 1876, inclusive. John Poole says in his testimony that the capacity of the ditch at its head, and as far down as where he lives, had nearly doubled in capacity from the time he went there, in 1873. Edwin Sawyer says that the ditch has increased in width four or five feet at his place since he went there in 1873; that it was four or five feet wide when he went there, and it is now eight or ten feet wide; that he thinks it is the same above and below his place. John Hagan says that the ditch would carry as much again as it did when he went there in 1875; George Meyers says that the capacity of the ditch has doubled since he went there in the summer of 1875, and that there has been about the same increase of water. Christian Beck says that from the head of the ditch down to Poole's, the ditch is "from a half to a third," "a great deal larger than it was; seems to be as large again" as in·1874–5. Henry Moyle states that in his judgment, the capacity of the ditch has increased since he went there in 1874, so that it will hold "pretty near as much again," and there is three or four times as much early water flowing now as then, and about a third more late water. Stephen Moyle says that there is three or·four times as much early water flowing now as in 1874, but that after June it diminishes. From the increase of lands subjected to irrigation, and from the increase in the number of settlers, it would seem that the ditch could not be otherwise than doubled in capacity. With such evidence before us, we do not feel authorized to say that the finding was unauthorized. But we do not think the objectionable word "doubled" is material. The important point

is as to whether the ditch has greatly increased in size or not; but whether it has "doubled" in capacity is unimportant. A number of witnesses testify that the ditch has been greatly increased in size.

The appellant's next exception is to the ninth (9th) finding of fact. The objection to it is that it declares that the respondents were induced to believe, and did believe, that they would have the right to use the said ditch for transporting water, by the consent, both expressed and tacit, of the plaintiff and its grantors, the citizens of Lehi." We do not think that this was necessarily intended to convey the idea that appellant or its grantors held out or offered directly the inducements to respondents that if they would settle on those lands they would be permitted to use the ditch. That would presuppose a contract before settlement. The respondents may have been induced to believe that they would be allowed to use the ditch and the water, from the fact that other parties, now members of the company, had been allowed to do so without objection; by the habit that had thus grown up, and by the fact that there was abundance of water. That the respondents did think they would have a right to use the ditch for transporting water, by the consent of appellant's grantors, is clearly shown all through the case. A man would not enter upon a barren desert and try to make a home there, unless he believed that he could get water for irrigating purposes. These new-comers were confirmed in this belief after their settlement by being called out by the agents—the water-masters—of appellants' grantors, to perform their share of annual work upon the ditch, in enlarging, putting in order, and keeping in repair the ditch, and this too, with, in some instances, the express understanding, and, in others, by the tacit consent, that they were to use the water and ditch, as other settlers, when not in use by prior appropriators. This use of the water and the ditch would be of no avail, except by cutting the ditch and leading the water upon their lands.

The appellant excepts in the next place to the tenth finding of fact. The objection is, that the finding states that a certain agreement, an exhibit in the case, purporting to

be between the Lehi people on the one side and some of the Alpine people on the other, was duly executed, and because it states that appellant and its grantors recognized the rights of the eight Alpine persons signing it, and others getting water through the Alpine ditch, to use waters flowing in the Alpine ditch, and to a fair and just proportion of the waters of the main ditch to be turned into the Alpine ditch.

The first exception to this finding, namely, that it states that the agreement was duly executed, seems to be based upon the ground that the committee had no authority to make the contract; but the evidence shows that the action of the committee was ratified by the Lehi people in public meeting. Even if there had been no writing, the approval of the committee's action by the Lehi people was a full recognition by the whole people of the rights of the eight "benchers" who were parties to the agreement. This exception was also based upon the ground that there were no parties to the agreement. It purports to have been made by eight Alpine citizens on the one side, and the inhabitants of Lehi on the other. The latter were represented by a committee acting for and on behalf of such inhabitants, and their action was approved. We think the parties were sufficiently designated. The appointment of a committee was by the Lehi people together in public meeting, and they could not well act otherwise in such a case than through a committee. It was objected also to this agreement that it had never been acted upon. The evidence is that the ditch was dug according to said agreement, and that the parties received water from the Lehi ditch and did their share of the work upon the ditch.

The second exception to this tenth finding is that regarding the recognition of the rights of the eight Alpine signers of the agreement and the rights of the other respondents, the appointment of Stephen Moyle as watermaster, the repeated division of the water by the Lehi watermaster with the Alpine ditch, the accepting of work by the Alpine people, the knowledge had by the Lehi people of the proceedings of the Alpine people and their not ob-

jecting to it, the sending for some of them to come down to Lehi to confer with them. These, and many other like matters, show recognition by the Lehi people of the Alpine ditch people's rights. We do not see that the court erred in any of their findings of fact. None of the other findings are excepted to, and we deem them, therefore, unobjectionable to appellant.

The appellant urges that, notwithstanding the evidence may be held to be sufficient to support the findings of fact, the findings are not sufficient to sustain the judgment in the following respects; namely, they show the construction and use of the ditch in question by the appellant and its grantors, but fail to show any right in the respondents; that whenever the respondents have had any water, or the use of the ditch, it has either been without the knowlege or against the consent of appellant or its grantors, or it has been by their permission and license when the water did not happen to be needed.

The persons who build an irrigation-ditch upon government land thereby become the owners of the ditch, and remain such as long as they use the ditch for irrigation purposes. But when they cease to use the ditch for transporting water the title to it reverts to the government or to the party who may in the meantime have acquired the government title in fee to the land over which the ditch is built. In one sense a ditch is land, just as a house is land, because it is connected with the freehold, and not because it is the freehold. The owner of such ditch never has a title in fee to it, but a qualified title, one that will be defeated by his failure to use it for the original purpose for which it was obtained. The builders of said irrigation ditch are the source of title against everybody except the government: *Jennison* v. *Kirk*, 98 U. S., 453. And the prior appropriator of water has the prior right to its use to the extent, in amount and time, of his first appropriation, and possibly to the extent to which he was at that time preparing to appropriate it: *Atchison* v. *Peterson*, 20 Wall., 515; *Richardson* v. *Williamson*, 24 Cal., 302; *Peck* v. *Vandenberg*, 30 Cal., 39; *Fabian* v. *Collins*, 3 Mont., 215; *Blaisdell* v. *Stephens*, 14 Nev., 17,

The findings do not show that the ditch in question was built by the appellant and its grantors. They show that a ditch was built by the Lehi ˉpeople in 1851, but that said ditch was not in all respects in the same place as the pres-ent ditch now in controversy, although for the greater part of the distance it occupied substantially the same place. That by reason of a flood in 1881 a new ditch was constructed, extending some three rods, and differing in location from the old ditch, but joining upon it. The ditch built by the first settlers was small, made to accommodate a small settlement of thirty-one or thirty-two settlers; the present ditch is a large one, made to accommodate two or three hundred settlers. The present ditch is not the one made in 1851; it is completely new. The old one was built by those early settlers. The present one was built by those early settlers, together with subsequent settlers. It is double the capacity of the first ditch. The respondents helped to build it to its present capacity. The thirty-one or thirty-two settlers who built the first ditch obtained title to the water by first appropriation, and to the ditch as then made by digging it and using it to convey water to their lands. They are the source of title to the ditch they built, but they are not the only source of title to the present ditch of which the first one is only a small part. All who worked to make the ditch as now found are the source of title to the ditch as now found. The work of the respondents in aiding to enlarge and make the ditch what it is was without objection on the part of the Lehi people.

No deeds were necessary to convey to any one who worked upon the ditch a right in and to it. He was, with the others who worked on it and built it, the source of title to the ditch they helped to make, except as against the government. Had the first settlers sought to convey to such a one a right or interest in the original ditch as made in 1851, a deed might have been necessary, but nothing of the kind was intended. The old settlers had the same lands and required the same amount of water and same ditch privileges. They did not part with these, but they held on to them and did not pretend to transfer

anything then in being, but simply allowed additions to be made to the size of the ditch and an increase to be made in the flow of the water. The helping to make this increase in size of the ditch and in the flow of the water, with the consent of the original settlers, gave the respondents their right and title to the ditch and the use of the water.

All of the Lehi people who had appropriated the water from this ditch prior to 1873, to the extent of this appropriation, have priority of right over all respondents, as the latter began using the water for the first time in 1873. But it does not appear that all of the grantors of appellant were thus prior in right to the respondents.

The findings show that the respondents occupied, opened up, and improved their farms in expectation of their right to use the water from the ditch in question; that none of them would have occupied, built upon, or improved these lands had they not so expected; that they were induced to believe and did believe that they would have the right to use the ditch for transporting water, by consent, both express and tacit, of the appellant and its grantors; that without the use of said ditch for transporting water their lands would be worthless; that there is no other source of water for them than this American Fork canyon, and that it is impossible to build another ditch, either alongside of this ditch or at any other place, to bring water from the canyon to their lands. We think such findings show a right to the respondents. The owner of a ditch cannot stand by from year to year and see other parties settle along the ditch and use water from the ditch—use the ditch to transport water to their lands; see them taking up government land that, without such ditch and such water, is worthless; see them breaking up the lands, opening farms, building upon and improving the lands, all without objection, and allowing them to work upon the ditch with them, in enlarging, clearing, and improving it; allowing them to make rods of new ditch and accepting it as part of the main ditch, and then, after this has gone on for years, be allowed to come forward and deny the rights of said parties, and exclude them from

the use of the ditch and the water. Such owner is estopped by his course and conduct from denying such parties the use of the water and the ditch, as they had been accustomed to use them by such tacit consent of the owner: *Dickerson* v. *Colgrove*, 100 U. S., 580; *Fabian* v. *Collins*, 3 Mont., 229.

There is nothing in the findings showing that whenever respondents have had any water or the use of the ditch it has been either without the knowledge or against the consent of the appellant or its grantors. They do show that respondents had water by permission or license of appellant or its grantors. But this license or permission was in such manner, as we have seen, that appellant cannot profit by it. It was a permission to use the water and the ditch from year to year, believing that they had the right to use the same, and, upon the strength of this belief and permission, to build up homes for themselves. It is now too late for appellant to say that they were acting without right.

The findings do not show that the respondents took any water when they were not entitled to take it, or that they used the ditch at any time they were not entitled to use it. There is nothing in the findings to authorize the appellant to claim the exclusive right to the ditch or to the water. And there is nothing which would warrant us in saying that the respondents were or are violating any of the rights of the appellant regarding either the ditch or the water. It must be remembered that this is a suit for an injunction, and it must affirmatively appear that the party applying for the injunction is entitled to it. Looking at the findings of fact, we do not see any such affirmative showing. The findings are, we think, sufficient to sustain the judgment.

The appellant alleges twenty errors of law occurring at the trial, the first eleven and the fourteenth of which are somewhat similar in their nature. They consist of allowing questions to be asked witness respecting an increase of the land irrigated, of the size of the ditch, of the flow of water, work done on the ditch, distribution of water, etc. It is true that this action is brought to prevent respond-

ents from cutting the banks and interfering with the ditch claimed by appellant. But the respondents, denying the right of the appellant to exclude them from the ditch, were entitled to show that they had the right to cut and interfere with the ditch. In addition to the circumstances attending their settlement, appropriation of water, use of ditch, knowledge and consent of appellant and its grantors, it was proper for them, in order to bear out their view of the case, to show that the ditch was enlarged, the amount of water increased, the amount of land subjected to irrigation was increased, what work was done on the ditch, how the water was distributed, etc. All these things went to sustain the respondent's position. Had they failed to prove, or been deprived of showing that the ditch had been enlarged, the flow of water increased, etc., the appellant could have pointed to such lack of proof to contradict the respondent's act, to show their position untenable. It could have shown that it was impossible for the respondents to take the water they did, and thereby cutting the ditch as they did, without encroaching upon the rights of appellant; that to do as respondents had done, would require a much larger ditch and a greater flow of water when none was shown.

The twelfth and thirteenth alleged errors of law occurring at the trial, have reference to Moyle's claim that he was watermaster, or deputy watermaster. Moyle testified that he had been appointed sub-watermaster by the Lehi water board. We do not see that it was improper that he should so represent himself. The fifteenth assignment of error of law occurring at the trial has reference to a question asked Henry Moyle as to an arrangement communicated to him by his brother. This communication consisted in his brother telling him of an arrangement which was proven by other parties to have been made. It was not an effort to prove what the contract was.

The sixteenth alleged error of law occurring at the trial was the overruling of appellant's objection to a question put to R. T. Booth as to the purport or object of a certain meeting of Lehi and Alpine parties. The objection seemed to be that the Lehi parties present had no authority to

bind the Lehi people. Proof by other witnesses plainly shows that those parties were duly authorized to act for the Lehi people, and that their action was afterwards ratified in public meeting.

The seventeenth alleged error of law occurring at the trial was the overruling of appellant's objection to the admission in evidence of the contract, exhibit I. There was no error in overruling the objection. Our views as to this contract are given under the exception to the tenth finding of fact.

The eighteenth of said alleged errors was the overruling of appellant's objection to a question asked Israel Evans as to what was said at the meetings of the Lehi people amongst themselves, about changing the location of the ditch. We do not think this testimony was very important, but it was not irrelevant. The object of the question seemed to be to get at the purpose of the Lehi people themselves as to the change of the location of the ditch, and as they were accustomed to act and speak through public meetings, we do not see that it was improper to show what such acting and speaking were. We are inclined to think that none of the assignments of error referred to are well taken. The objections were properly overruled by the court.

The nineteenth of these alleged errors of law was the overruling of appellant's objection to the admission in evidence of the record in the case of *Ellingson & Co.* v. *Poole et al.* That was a suit begun in 1877 by Ole Ellingson on behalf of himself and two hundred others, against Poole et al., to enjoin the defendants therein "from diverting, or taking, or in any manner interfering with the said water flowing in said Lehi irrigation ditch, or with any portion of said water." The plaintiffs in that case, we presume, were the grantors of the appellant in the present case. At least that suit was brought to defend the same interests that the present suit is brought to defend. The defendants in that action are, we believe, a portion of the respondents in the present action. The present suit is brought to enjoin and restrain the respondents "from entering upon, tapping, or in any manner interfering with

the said ditch, so as to prevent the water and all the waters from flowing therein. These actions are somewhat similar. The object of the Ellingson suit is to prevent the eight defendants therein from interfering with the water of the ditch; and the present action is to restrain respondents from interfering with the ditch, so as to prevent the water from flowing therein. The evident object of both suits is to prevent the defendants therein from taking water from the ditch. In the Ellingson suit the court granted the prayer of the plaintiffs therein for and during the months · of July, August, and September. The granting of that injunction for these three months was a denial of the injunction for the residue of the year. It was in effect a finding that for all the year, except those three months, the defendants therein had the right to interfere with the water flowing in the ditch; that they had the right to use the ditch for transporting water to their lands. The object of introducing the record of that case in evidence was to show that respondents had permission to use the ditch prior to the first of July. It certainly sustains that position as to the eight respondents who were defendants in that action.

That record would tend also to show that, as to these eight respondents, the appellant was seeking in a second suit the litigation of a question that had already been settled in another action. That record also might tend to support the position that the respondents, other than the eight referred to, had the consent of the appellant's grantors to use their proportion of water, and, of course, to use the ditch thereby, at any season of the year, including the summer months of July, August and September. If such had not been the case, why were they not included as defendants in the former action—the Ellingson suit? The fact that they were then farming their lands and using the water and ditch would lead the mind to the conclusion that if only eight of their number were sought to be enjoined, the remainder of their number were doing nothing that would warrant their being enjoined. We think the court did not commit any error in overruling appellant's objection to the introduction of the record.

The twentieth, the last assignment of error of law occurring at the trial, was that the court below erred in "rendering its decree in said cause dismissing plaintiff's complaint, and in entering judgment for costs in favor of defendants."

This alleged error has been treated on under other branches of this opinion.

The practical result of the judgment of the court below is not, in our view, what is claimed in the brief of appellant. If the judgment be sustained, it does not give to each of the respondents the right to go to the ditch, cut its banks, or dam it up, at his pleasure, or when he may think he is entitled to do so, making himself the judge of the extent of his right. If any such result is to follow the judgment, it is not by reason of anything therein that has been assigned for error; but it arises, if at all, from such part of the judgment as has not been excepted to. The judgment, so far as excepted to, has reference only to the dismissal of the complaint and to judgment for costs. A dismissal of the complaint and giving judgment for costs leaves the respondents, so far as their rights to the use of the water and rights to the ditch are concerned, where they were before the action was brought, except that appellant has no grounds for this complaint, that it has not made it appear that its rights have been violated, or that they are threatened with violation.

We have found the consideration of this case somewhat embarrassing and laborious. The record is voluminous, and the evidence conflicting, and the questions intricate. We feel satisfied, although it is not clear, that the rights of the appellant, so far as it represents some of its grantors, have been violated by some of the respondents; yet we feel equally confident that the respondents as a whole have not violated the rights represented as a whole by the' appellant. It has been impossible for us to unravel these conflicting rights or interests. It is not made to appear that all the names of the grantors of the appellant and their interests are made to appear; and we nowhere, in any pleading, order, or judgment, find the names of the respondents otherwise than as "Stephen Moyle et al.,"

except that in the verification to the answer and in the findings of fact John Poole is designated a defendant. The names of many supposed respondents are given in the evidence, but the court cannot look to the evidence to learn who are parties to the action.

Upon the whole case, as presented to us, we think the decision of the court below should stand. Let the judgment and the order overruling the motion for a new trial be affirmed.

ZANE, C. J., and POWERS, J., concurred.