## PARKE v. KILHAM.

Actions for the diversion of the waters of ditches, are in the nature of actions for the abatement of nuisances, and may be maintained by tenants-in-common in a joint action.

The line upon which a ditch is actually intended to be dug, should be run within a reasonable time after the line of preliminary survey has been run, in order to make the right of the ditch-owners date back to the survey. What is a reasonable time, must depend upon the circumstances of the case.

Where a party stands by and sees a ditch-owner appropriate the water of a creek to his own use, at a great expense, and does not inform him of his claim to the waters, he and his vendees are estopped from afterwards claiming the water.

To turn aside a useful element from premises, is as much a nuisance as to turn upon them a destructive element.

A ditch, to carry off water rightfully flowing to a mining-claim, is as much a nuisance as a dam to flood it.

APPEAL from the District Court of the Fifth Judicial District, County of Amador.

On re-hearing. Parke and Struck, the plaintiffs in the Court

below, brought this action to recover from defendant the use of the waters of the middle fork of Jackson creek, and for damages, alleging a priority of right thereto. The answer of defendant denied plaintiffs' priority, and claimed an exclusive right to the use of the waters of that stream. The testimony showed that plaintiffs' grantors, about the first of December, 1852, located a mining-claim on the creek, at a place called Elliot's Ranch, and in order to work it erected a small dam in the creek and turned a portion of the water into their claim, for mining purposes.

That in October, 1852, the grantors of defendant projected a line of ditch, by drawing a base line from the lower end thereof to a point on the creek some distance below Elliot's Ranch, where they designed erecting their dam, and at the same time put up notices on the creek of their intention to use and appropriate the waters thereof in their contemplated work.

That in the spring of 1853, when the ditch was nearly complete, they changed the upper part thereof so as to take the water out of the creek about one hundred rods above the mining-ground occupied by plaintiffs' grantors.

That in doing this, they ran the ditch through the Elliot Ranch, and paid Elliot, who was one of plaintiffs' grantors, a small sum for the right of way, and agreed to give him some water for irrigating purposes. There was some testimony going to show that plaintiffs' grantors had witnessed the appropriation of the water by defendant's grantors, and had acquiesced therein.

On the trial, defendant's counsel asked the Court to instruct the jury " that if those from and through whom the plaintiffs' claim had the prior right to the waters in the middle fork of Jackson creek, ' *and they stood by and saw*' those from whom defendant derives his title to the ditch, and the right to the waters of the said creek, appropriate the water of the creek, at a great expenditure of money and labor, under the mistaken idea that the defendant's vendors were obtaining the first appropriation, and did not inform them of the mistake, that they, plaintiffs' vendors, and the plaintiffs, who claim under them, are estopped from setting up their prior right at this time." This instruction the Court refused to give, and defendant excepted.

Plaintiff had a verdict for a small money judgment and for one hundred inches of water. The defendant moved for a new trial, which being denied, he appealed.

*Robinson, Beatty & Botts,* for Appellant.

*Smith & Hardy* for Respondents.

BURNETT, J., delivered the opinion of the Court—MURRAY, C. J., concurring.

This case was decided at the last April Term of this Court, and

a re-argument had at the present time.  We are satisfied, upon a more full argument and a more careful consideration of the case, that the judgment of the Court below should be reversed, and a new trial had.  The learned counsel for the defendant insists that we did not correctly understand him, when we said, in a former opinion,.that " this position is based upon the idea, that the proper point could not be designated with certainty by a proper survey, but must be determined by the actual construction of the ditch."

Taking the language of the brief in connection with the facts as proved, we did so understand the counsel.  It was proved by Cunningham, one of defendant's witnesses, that " the base line was run for the purpose of determining where the ditch would strike the creek.  This point was ascertained by starting at the upper end of the base line, and leveling up the creek far enough to allow the ditch a sufficient declivity, which we did in October, 1852, and we placed our notice of claim of water at this point on the creek above the end of the base line."  " It was not until the spring of 1853, that we thought of adopting the upper line, on which we dug the ditch."

This statement of the witness is very explicit, and shows that the point where the notice was placed, was intended as the upper terminus of the ditch.  This being true, the argument of the learned counsel would hardly be applicable to the facts proved, unless taken as we understand it.  We, however, cheerfully make the correction.

It is, undoubtedly, true, that a base line is generally first run from the point where the water is to be used, to the stream from which it is proposed to be taken.  This line is run upon a level, and the object is to ascertain the fact, whether the water in the stream can be made to flow to the point where it is intended to be used.  The line upon which the ditch is actually intended to be dug, should afterwards be run within a reasonable time, which must depend upon the circumstances of each particular case.

The instruction offered by the defendants, we now think, was substantially correct, and should have been given.

There was a point made by the defendant which we did not notice in our former opinion.  It is insisted that there is a misjoinder of parties plaintiffs, as they were tenants-in-common, and should have brought separate suits for the restitution of the water.  In the case of Johnson v. Sepulveda, 5 Cal., 149, it was held, that " for injuries to their common property, as trespass, *quare clausum fregit*, or nuisance, etc., tenants-in-common should all be joined, but they must sue severally in real actions, generally, as they have separate titles."  See also Throckmorton v. Burr, 5 Cal., 400.

The injury complained of in this case, is in the nature of a nuisance.  It is very similar to the obstruction of ancient lights.

To turn aside a useful element from the premises, is as much a nuisance, as to turn upon them a destructive element. In both cases, the injury may be equally material. A ditch, to carry off water, rightfully flowing to a mining-claim, is as much a nuisance as a dam to flood the premises.

For these reasons, the plaintiffs properly brought their suit jointly. It would have been error for them to have sued separately. The judgment of the Court below is, therefore, reversed, a new trial ordered, and the cause remanded for further proceedings.