[L. A. No. 3968. In Bank.—August 28, 1917.]

## J. W. JAMESON and T. J. WRAMPELMEIER, Respondents, v. CHANSLOR–CANFIELD MIDWAY OIL COMPANY (a Corporation), Appellant, and I. STRASSBURGER, Intervener and Respondent.

LANDLORD AND TENANT—LEASE OF OIL LANDS—PROVISION IN LEASE BY JOINT LESSORS FOR FORFEITURE—NOTICE TO TERMINATE TENANCY MUST BE CONCURRED IN BY ALL LESSORS.—Where in a lease it is provided that failure on the part of the lessees to perform any of the conditions embodied therein for a period of thirty days shall render the lease null and void if the lessors shall elect, a forfeiture of the leasehold interest for breach of conditions can be declared only by the joint or concurrent action of all the lessors.

ID.—CONSTRUCTION OF LEASE.—The provision for forfeiture in such a lease is not a right "reserved," but a right "created," by the instrument "in favor of several persons" within the meaning of section 1431 of the Civil Code.

ID.—STRICT CONSTRUCTION.—Such a condition is also within the provision of section 1442 of the Civil Code that "a condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."

ID.—JUDGMENT QUIETING TITLE IN SUCH A CASE IN FAVOR OF TWO OF THREE JOINT LESSORS ERRONEOUS.—Where under a lease by three joint lessors, providing for forfeiture for breach of conditions for thirty days after notification by the lessors, two of the lessors owning an undivided three-fourths interest gave notice and thereafter brought action and recovered judgment against the lessee quieting their title to their undivided three-fourths interest and adjudging the defendant to be still the owner of an undivided one-fourth interest subject to the lease as tenant in common with the plaintiffs, it was held that there was no foundation for the action or the judgment, and the judgment was reversed.

CLXXVI Cal.—1                    (1)

CONTRACTS — CONSTRUCTION OF CONTRACTS — CONDUCT OF PARTIES.—
Where the terms of a contract are clear and explicit, the meaning
is not doubtful, and there is no latent ambiguity, it cannot be varied
by subsequent conduct of the parties showing their understanding
that a right under it was several and not joint, or by surrounding
circumstances. The parties must be deemed bound by the contract,
regardless of the results produced.

APPEAL from a judgment of the Superior Court of Kern
County, and from an order denying a new trial. J. E.
Prewett, Judge.

The facts are stated in the opinion of the court.

E. W. Camp, Oscar Sutro, M. W. Reed, and U. T. Clot-
felter, for Appellant.

Waters & Goodcell, and Heney, Farraher & Johnson, for
Respondents.

SHAW, J.—This is an action by the plaintiffs to quiet their
title against the alleged claims of the defendants to an un-
divided three-fourths interest in some eight thousand acres
of land. The complaint alleges that the plaintiffs are the
owners of said interest in the land, that the defendants, with-
out right, claimed an interest therein adverse to plaintiffs,
and prayed that the title of the plaintiffs be quieted and for
general relief. The answer admits that the plaintiffs are
the owners of an undivided three-fourths of the land, subject
to certain rights of the defendant, and alleges that the defend-
ant holds the land and is entitled to possession thereof under
certain oil leases executed by the plaintiffs and I. Strass-
burger, the intervener, as lessors, and duly assigned to
defendant.

The court made findings and gave judgment in favor of
the plaintiffs. Defendant appeals from the judgment and
from an order denying its motion for a new trial.

The execution of the leases referred to in the answer and
the assignments thereof to the defendant are conceded. The
plaintiffs' action is based upon the theory that the leases were
forfeited prior to the beginning of the action and that the
defendant was in possession at that time without right. The
only proposition which we find it necessary to determine is

the question whether or not the leases held by the defendant have been terminated by the notices given to the defendant by the plaintiffs.

The leases contain covenants whereby the lessees agreed to drill wells for oil and gas upon the land, do the annual assessment work and take the steps necessary to acquire patents to the lessors for the land from the United States, operate pumps to obtain from the land oil and gas, and pay to the plaintiffs a royalty thereon. These agreements, except one, extended for a period of thirty years and granted to the lessees the possession of the land for all the purposes necessary to enable them to perform the stipulations of the lease on their part.

The main controversy arises upon four leases. Two of them were executed on September 6, 1900, one on September 28, 1901, and the fourth on October 1, 1901.

All of these leases contain a paragraph numbered XII, which is as follows:

"It is especially agreed by said parties of the second part that failure upon their part to perform any of the conditions embodied herein for a period of thirty days after notification by the parties of the first part to perform such conditions shall render this agreement null and void if said first parties shall so elect."

These leases were executed by J. W. Jameson, T. J. Wrampelmeier, and I. Strassburger, as lessors, except one which was executed by the Midway Oil Company, the entire capital stock of which was owned by said persons, who also, it appears, owned the land covered thereby. By subsequent transactions the said individuals were recognized as the real lessors, the corporation acting as their agent in making the lease. Except as stated in paragraph XII, the leases contained no provision for a forfeiture, or for a re-entry by the lessors. There is one unimportant exception which will be hereinafter noticed. On September 25, 1911, Wrampelmeier and Jameson served on the defendant a notice referring to the aforesaid paragraph XII of the leases and to the implied covenants of the leases and requiring the defendant, within thirty days after service of the notice, to perform each and every of the conditions embodied in each of the said leases, setting forth the particulars thereof, and stating that the failure of the defendant to perform any of said conditions

for a period of thirty days after service of notice would render the said leases, respectively, null and void, and that in that event said Wrampelmeier and Jameson would elect to terminate the said leases because of said failure.

Thereafter, on December 6, 1911, Wrampelmeier and Jameson served upon the defendant a notice and demand, referring to the previous notice of September 25, 1911, and declaring that because of the failure of the defendant to perform the conditions embodied in said leases and mentioned in said notice, and each and every of them, within the thirty days thereafter, said Wrampelmeier and Jameson did thereby elect to declare said leases null and void and to terminate the same, and they thereby demanded of the defendant that it immediately surrender possession unto them of all of said property and every part thereof and cease to occupy or use the same. Three days thereafter, to wit, on December 9, 1911, they began the present action.

The two plaintiffs owned a three-fourths interest in the land and Strassburger owned a one-fourth interest. The judgment of the court purports to quiet the title of the plaintiffs to their three-fourths interest in the lands. It contains a provision declaring that Strassburger was and still is the owner of an undivided one-fourth interest as tenant in common with the plaintiffs and that said one-fourth interest of Strassburger still remains subject to the leases of the defendant which the court declared had been forfeited as between the two plaintiffs and defendant. The judgment also provides that the plaintiffs shall have a writ of possession for the three-fourths interest adjudged to belong to them as against the defendant.

The defendant insists that under paragraph XII of the leases it was not within the power of two of the lessors to declare a forfeiture of the leasehold interest, and that such forfeiture could be declared only by the joint or concurrent act of all the lessors. We are of the opinion that this proposition must be sustained.

The case comes clearly within the provisions of section 1431 of the Civil Code. It reads as follows: "An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several, except in the special cases mentioned in the title on the interpretation of contracts. This presumption, in the case of a

right, can be overcome only by express words to the contrary.''

The ''special cases'' referred to in this section have no bearing upon the present question, nor does the clause relating to ''an obligation imposed'' affect the case.

As applied to this case the section is to be read as follows: ''A right created in favor of several persons is presumed to be joint and not several. This presumption can be overcome only by express words to the contrary.''

The plaintiffs contend that this section has no application to the case because, as they say, the right existing by reason of paragraph XII of the leases is not a right ''created'' in favor of the lessors but is a right ''reserved'' to them. With this we cannot agree. The paragraph does not reserve to the lessors a part of the estate included in the grant to the lessees, but merely prescribes a mode for the termination of that estate upon a breach of conditions. This right did not exist, and would not have existed, but for the insertion of this clause in the lease. (1 Taylor on Landlord and Tenant, sec. 290.) The word create means ''to bring into being.'' (Webster's Dictionary.) Words are to be construed according to the approved usage of the language. (Civ. Code, sec. 13.) The word ''create'' is an appropriate term to describe a right which is brought into being by a provision of a contract. It is strictly in accordance with approved usage to say that this right to declare a forfeiture was ''created'' by the contract, and as it was created ''in favor of several persons,'' and there are no words, express or otherwise, declaring it to be a several right, it follows that, even if it is not, because of its nature, a joint right of all the lessors, it becomes so by force of this section of the Civil Code.

The effect of paragraph XII and of a notice and declaration by the lessors availing themselves thereof would be to cause a forfeiture of the interest of the lessees. The paragraph, in effect, states a condition subsequent, upon the happening whereof the estate of the lessees shall become forfeited. The construction of such a provision is governed by the rule laid down in section 1442 of the Civil Code: ''A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.''

The intention of this provision was to enable the lessors to procure a strict and faithful performance of the provisions

of the leases or, on failure to do so, to retake the property from the lessees, and therefore it was for the benefit of the lessors and is to be strictly interpreted against the lessors. (1 Underhill on Landlord and Tenant, p. 625, sec. 391.)

It is not necessary to resort to strict construction, however, to reach the conclusion that the forfeiture here provided for can be brought about only by the joint action of all of the lessors. The event which causes the forfeiture is the failure of the lessee to perform any of the conditions embodied in the lease for a period of thirty days after a notification. By the language of the paragraph this notification must be given "by the parties of the first part." It is only upon the giving of this notice and the failure to perform the conditions mentioned therein that the forfeiture can be declared. This is the condition which must happen in order to give a right to declare the forfeiture. The condition cannot be said to have happened upon notification given by some of the parties of the first part or any number of them less than all. After the notification has been given by all the parties, a forfeiture may be brought about only "if said first parties shall so elect." Here again the action of all said first parties is necessary to the happening of the condition. It is argued that the only purpose of the notification was to give information to the lessee and that this could be given as well by notice from one of the parties as from all. But the contract measures the rights of the parties in this respect, and, being a contract regarding a forfeiture and to be strictly construed, its requirements must be fully met before the right depending thereon can be complete.

Many reasons might be given for the requirement, which it is to be presumed the parties of the second part insisted upon, that the three lessors should unite in such proceedings for a forfeiture. The condition brought about by this judgment is a good illustration of a very important reason. While the respective lessors each owned an interest in the property as tenants in common and each for the purposes of the lease granted to the lessee his individual interest, yet the lessee thereby acquired a leasehold interest in the entire estate. The purposes of the lease clearly indicate that this was one of the inducing causes for the acceptance of the lease by the lessees. A well for the production of oil bored upon a tract of land is as beneficial to one tenant in common, ac-

cording to his interest, as to another. It cannot be supposed that the lessee would have been willing to have made the development work here necessary, expending therein somewhere near one million dollars in so doing, upon a lease from one or two of three tenants in common. The result would have been that the tenants in common not joining in the lease would have had an equal common right with the lessee to the oil produced. The present judgment, if valid, makes the plaintiffs and the defendant, with respect to the wells and the possession of the land for the purpose of producing oil, tenants in common, notwithstanding the forfeiture. By the terms of the leases the defendant is bound to continue the drilling and operation of wells on the land and the production of oil therefrom. By the judgment it remains bound to do so in favor of Strassburger, and the plaintiffs will be entitled to three-fourths of the oil extracted and be under no obligation to defendant except that which arises from the common-law duty of a tenant in common to make contribution. The plaintiffs would also have an equal right to operate the wells. It is clear that the parties never intended to enter into a contract which would bring about such consequences. Such construction is not only contrary to the axiomatic rule of section 1442 of the Civil Code that "a condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created," but in view of the nature and objects of the contracts of lease it would be entirely unreasonable and absurd.

If this, as respondent contends, places any two of the lessors at the mercy of the other, it only does that which was intended by the terms of the contract and they cannot complain unless for fraud or mistake, of which there is no claim. We are not dealing with the rights and remedies secured to the lessors by force of the law, but with the rights which they secured to themselves by the provisions of their contract. They attempted to lay the foundation for a forfeiture by proceeding under their contract, which requires the joint action of all the lessors to accomplish that result. The contract does not permit it to be done by less than all the lessors.

We perceive no force in the argument that the conduct of the parties subsequent to the execution of the lease gives evidence of their understanding that the right in question was several and not joint. It may have happened frequently in

the dealings between the parties that one of the lessors has acted for all, either by express authority or by acquiescence and consent. Such conduct has little significance in the interpretation of a contract. It is sufficient to say however, that where the terms of the contract are clear and explicit, where the meaning is not doubtful and there is no latent ambiguity, it cannot be varied by the subsequent conduct of the parties or surrounding circumstances. The parties must be deemed to be bound by such contract, regardless of the results produced.

This view of the effect of the contract is supported by abundant authority both in this state and elsewhere. In *Randol* v. *Scott,* 110 Cal. 590, [42 Pac. 976], a covenant by "said lessees" not to permit an assignment of the lease to be made by bankruptcy or otherwise, without the written consent of the lessors, was held not to be violated by the filing of a petition in insolvency by one of the lessees and the resulting transfer of his interest in the leasehold to an assignee. The court said that "the meaning of the parties is presumed to be that the lease should not be assigned in the only way in which it could have been assigned, namely, by the joint act of the lessees."

So in *Spangler* v. *Spangler,* 11 Cal. App. 322, [104 Pac. 995], the covenant was that "the lessees" should not "assign the lease without the written consent of the lessors under penalty of forfeiture." It was held that an assignment by one of the lessees only was not a breach of the covenant. In *Calvert* v. *Bradley,* 57 U. S. 596, [14 L. Ed. 1066], there was a lease by several tenants in common with a covenant by the lessee to keep the premises in repair. It was held to be a joint covenant, and that all must join in an action for a breach of it. The court said: "So far as the reservation and payment of rent to the covenantees, according to their several interests, made a part of the lease, the contract was several. . . . But in this same lease there is a covenant between the proprietors and the lessee, that the latter shall keep the premises in good and tenantable repair, and shall return the same to those proprietors in the like condition, and it is upon this covenant or for the breach thereof that the action of the plaintiffs has been brought. Is this a joint or several covenant? It has been contended that it is not joint, because the stipulations are with the several covenantees jointly and sever-

ally.   But the answer to this position is this: Are not all the
covenantees interested in the preservation of the property de-
mised, and is any one or a greater portion of them exclusively
or separately interested in its preservation?   And would not
the dilapidation or destruction of that property inevitably
affect and impair the interests of all, however it might and
necessarily would so affect them in unequal amounts?   It
would seem difficult to imagine a condition of parties from
which an instance of joint interests could stand out in more
pronounced relief.''   Substantially the same reasons exist
here with respect to the covenants to bore wells, develop oil
and other minerals and store the same, protect the property
from liens, and do the assessment work necessary to keep the
mining locations alive.   These are the most important of the
things mentioned in the notice to perform.   And even
stronger reasons exist, as we have shown, for holding that the
right created in the lessors by paragraph XII is joint, where
·giving it that effect serves to protect the tenant in possession
not only from a partial forfeiture, but also from a sort of
tenancy that could not reasonably have been intended or con-
templated.   (See, also, *Foley* v. *Addenbrock,* 4 Q. B. 197;
*Kitchin* v. *Buckley,* 1 Lev. 109; *Bradburne* v. *Botfield,* 14
Mees. & W. 559; *Thompson* v. *Hakewill,* 19 Com. B. (N. S.)
713; *Clapp* v. *Pawtucket,* 15 R. I. 494, [2 Am. St. Rep. 915,
8 Atl. 697].)

Some of the authorities above cited involved the question of
the right of tenants in common to sue severally for the breach
of a covenant running to all of them jointly, and not to the
right of less than all to declare a forfeiture, or re-enter for
such breach.   In this state it may be that the rule has been
changed by statute with regard to the necessity for the
joinder of all the co-owners in such actions.   In the early
history of the state it was held that tenants in common ''must
sue severally in real actions, generally [the case was eject-
ment], as they all have separate titles.''   (*Johnson* v. *Sepul-
beda,* 5 Cal. 151; *Throckmorton* v. *Burr,* 5 Cal. 400.)   These
decisions were made in the year 1855.   In 1857 the legislature
passed the act, now incorporated into the Code of Civil Pro-
cedure as section 384, providing that all the tenants in com-
mon, or any number less than all, may jointly or severally
sue ''for the enforcement or protection of the rights of such
party.''   (Stats. 1857, p. 62.)   The code also provides that

"those who are united in interest must be joined as plaintiffs or defendants." (Code Civ. Proc., sec. 382.) In the case of a joint right created in favor of tenants in common by the covenants of a lease made by them it may be a matter of doubt, under these sections, whether they may sue severally or whether all must join. In *Johnson* v. *Sepulbeda, supra,* and in *Parke* v. *Kilham,* 8 Cal. 79, [68 Am. Dec. 310], it was said that the necessity for the joinder of all depends on the nature of the injury to the common property, or of their interest in the thing in controversy. But the cases first cited settle the question of the nature of a covenant or right such as that here involved, and whatever may be the statutory rule regarding the right of each to sue severally after a forfeiture has been declared in the manner prescribed by the contract, it is plain from these decisions that a right given to several lessors, by a contract of lease, to declare a forfeiture for breaches of the character here involved must be exercised by all and cannot be exercised by less than all.

The notice of September 25, 1911, requiring performance of the conditions of the leases, expressly states that it is predicated, not alone upon paragraph XII of the leases, but also upon subdivision 3 of section 1161 of the Code of Civil Procedure. It may be, in view of section 384 of the Code of Civil Procedure, above mentioned, that if a forfeiture had taken place in favor of several tenants in common in pursuance of a notice under section 1161, either of them might maintain an action of unlawful detainer under the latter section. Perhaps, also, section 384 would require the court to hold that either of the tenants in common could, under section 1161, produce a forfeiture, as in that section provided, by giving a separate notice. This again would raise the question whether it would be a forfeiture of the entire estate, or only of the estate held under the common owner who gave the notice. The question would also arise whether, upon such statutory forfeiture, where, as here, the lease contains no provisions for a re-entry by the lessor, he could maintain ejectment, or an action to quiet title, or would be confined to the action of unlawful detainer which section 1161 was designed to sustain and in which special authority is given by section 1179 for relief to the tenant after judgment, in case of hardship. Section 791 of the Civil Code provides for a re-entry and forfeiture by giving the notice provided in

section 1161 of the Code of Civil Procedure, in all cases where the right of re-entry is given by the lease. As none is given by these leases, section 791 has no application, and the lessors have no rights, except such as are given by paragraph XII of the lease and by said section 1161. But it is unnecessary to decide these questions. The plaintiffs' notice does not conform to the requirements of section 1161. The notice prescribed in subdivision 3 is a "notice, in writing, requiring the performance of such conditions or covenants, *or the possession of the property.*" The notice of September 25, 1911, required performance of the conditions, but contained nothing concerning possession of the property. The notice and demand for possession served on December 6, 1911, did not require performance, and it did not give any time, but demanded immediate possession. Neither of the notices was a compliance with the statutory provisions. It cannot be disputed that proceedings of this character, involving, as they do, the forfeiture of valuable estates for years, a thing not favored by the law, must conform substantially to every material requirement of the statute by which they are authorized. (*Opera House etc. Assn.* v. *Bert,* 52 Cal. 471.) Statutes of this character are looked upon by the courts in the same light as contracts providing for forfeiture. Concerning the latter it has been said: "It has always been considered that it was necessary to restrain it to the most technical limits of the terms and conditions upon which the right is to be exercised," and that "covenants of this description are construed by courts of law with the utmost jealousy to prevent the restraint from going beyond the express stipulation." (*Randol* v. *Scott,* 110 Cal. 596, [42 Pac. 977].) The plaintiffs acquired no rights under section 1161.

The statement that the leases create no right of re-entry except as set forth in paragraph XII requires some explanation. Paragraph IV provides that if the lessees fail, on their part, to do the assessment work upon any unpatented mining claim prior to September 1st and record the necessary proofs thereof, for any year, the lease "shall be null and void as to such claims and all moneys expended by" the lessees upon such claims "shall be regarded as full rental of such claims till that date." It is questionable whether this provides for a re-entry upon such unpatented claims. But it appears that patents were obtained for six thousand acres of the land. It

is obvious, therefore, that a breach of this stipulation as to the remainder would not justify a forfeiture of the lease upon the part for which the patents were issued and could not justify the judgment for the possession of the same.

These conclusions render it unnecessary to consider the other points presented in the case. The attempt of the plaintiffs to forfeit the estate of the lessee as tenant in possession under the leases was ineffectual. Consequently, there is no foundation for the action or for the judgment.

The judgment and order are reversed.

Sloss, J., Henshaw, J., Melvin, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.