Filed 2/6/23 P. v. Brock CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E077983 |
| v. | (Super.Ct.No. FBA04003) |
| MICHAEL BROCK, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Tony Raphael, Judge. Reversed.

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

In 1997, defendant Michael Brock pled guilty to one count of murder based on his participation along with three others in planning and carrying out a carjacking that

1

resulted in the shooting death of the victim in a landfill near Barstow, California.

Defendant was sentenced to a term of 25 years to life. In 2019, following enactment of

Senate Bill No. 1437, defendant filed a petition pursuant to current Penal Code section

1172.6 (formerly § 1170.95). The trial court determined he had established a prima facie

showing of eligibility and issued an order to show cause. Following an evidentiary

hearing, the court found defendant was not entitled to resentencing because he was a

major participant and acted with reckless indifference to human life. Defendant appeals.

On appeal, defendant argues (1) he is entitled to a new evidentiary hearing because

the trial court considered evidence currently deemed inadmissible pursuant to the

amendments enacted pursuant to Senate Bill No. 775, (2) the People failed to prove

beyond a reasonable doubt that defendant acted with reckless indifference to human life,

and (3) defendant was deprived of effective assistance of counsel if the procedural error

is deemed forfeited. We reverse.

## BACKGROUND

Because defendant pled guilty in the trial court and because the documents

comprising the factual basis for the plea are not included in the record on appeal[1], we

take the facts of the offense from the preliminary hearing transcript, which was submitted

by stipulation of both parties in the trial court, was relied upon by petitioner on appeal for

---

[1] At the time of the plea, defendant agreed that the court could consider the police reports and the transcript of the in limine motions of the trial that was in progress at the time of the negotiations that led to the plea bargain. Those records are not before us, and because defendant has referred to the preliminary hearing transcript for the facts of the offense, we follow suit, given that both parties stipulated that the trial court could consider it in ruling on the petition for resentencing.

the background facts, and was made a part of the record on appeal upon defendant's request for augmentation.

On the date of the killing, defendant and his three companions (Alexander Sanns, Dwayne Peirfax, and David Ortiz) met at Peirfax's house, and discussed how they were bored and decided to drive to Las Vegas, but first they would need to steal a car. Defendant went home and got his gear—dark clothing, a dark hat, jacket and gloves—prior to the planned theft. He also brought a roll of duct tape to tie up any victim. They went to an apartment complex to steal a car. They went to the parking lot of the complex waiting for a prospective victim to show up so they could steal his or her car.

Victim Robert Chen drove up in a vehicle, and, as he exited the car, he was approached by defendant and Sanns. Sanns had his hand on a large caliber gun in his pocket, which he drew out as they approached the victim. The gun had a sawed-off barrel. Defendant was standing next to Sanns when the car was "jacked."

According to defendant, Sanns demanded the victim's car keys, and the victim complied. According to Sanns, defendant demanded the keys as Sanns pointed the gun at the victim. Then defendant called to Ortiz and Peirfax who were waiting near a trash dumpster. Ortiz and Peirfax joined defendant and Sanns, as the victim was forced into the rear seat of the vehicle, with Sanns and Peirfax on either side of him. Ortiz drove the vehicle, with defendant in the front passenger seat.

As they drove, Sanns and Peirfax took property from the victim: $60 in cash, and a watch. After Sanns took money from the victim's wallet, he handed the wallet back to the victim. Eventually they reached the Barstow trash landfill, where they made a U-turn and stopped on the opposite side of the road, facing Barstow. Prior to arriving at the landfill, defendant looked through the glove box of the victim's vehicle, looking for whatever might be there. The defendant along with Ortiz and Sanns walked the victim out into the desert while Peirfax waited at the car. Defendant stopped at some point, while Sanns and Ortiz proceeded approximately 20 feet further with the victim. Sanns tried to fire the gun but was unsuccessful, so Ortiz, who noticed the barrel was loose, took the gun from him and jammed the barrel back into the gun. Thereafter, Ortiz fired three shots[2], and the three of them (defendant, Sanns and Ortiz) returned to the car.

Meanwhile, in the trunk of the vehicle, the victim's briefcase, which held his phone, was found; Peirfax also found a key chain, a pocket knife and some cases of V-8 juice in the trunk, which he kept. Defendant received $20 of the victim's cash. After the killing, the group returned to Barstow where the gun and the briefcase were dropped off at the house of an acquaintance. The car was left at a Sunset Drive address, approximately one mile and a half from the apartment where the victim was staying.

The next morning, an employee of the landfill discovered the body of the victim and reported it to co-workers and called for emergency assistance. The victim had suffered three gunshot wounds: one shot was to the face, with noticeable stippling. A

---

[2] Ortiz told the investigator that the victim rushed towards him, and the gun went off. He then said he fired two more shots as the victim fell from the first shot.

4

second wound entered the victim's back and exited from his chest. The third wound was on the victim's inner left wrist, with an exit wound on the outer wrists. The facial wound, which penetrated the brain before exiting, was the cause of death. The wounds to the wrist lined up with the chest exit wound, suggesting the victim was laying on his left side or face when inflicted.

Each of the perpetrators were interviewed and made incriminating statements which were admitted at the preliminary hearing. A second amended information charged defendant (along with his co-perpetrators) with murder (Pen. Code § 187, subd. (a))[3], with two special circumstances alleging the murder occurred during the commission of a kidnaping, as well as during the commission of a robbery (§ 190.2, subd. (a)(17)). Defendant was also charged with carjacking (§ 215, count 2), kidnaping (§ 207, subd. (a), count 3), and robbery (§ 211, count 4). Respecting counts, it was further alleged that a principal was armed with a firearm (§ 12022, sub. (a)(1)), and that a principal personally used a firearm (§ 12022.5, subds. (a)(1), (a)(2)).

During voir dire at trial, and apparently after in limine motions were considered by the court[4], defendant entered a change of plea to guilty of first degree murder, based on carjacking, and was sentenced to a stipulated sentence of 25 years to life. In return for the plea, the prosecution dismissed the remaining counts and all enhancements and

---

[3] All further statutory references are to the Penal Code unless otherwise indicated.

[4] The transcript of the in limine motions were indicated—along with police reports—as part of the factual basis for the plea. However, they are not included in the record on appeal.

special circumstances allegations. The factual basis for the plea would be established by the police reports and the transcript of the in limine motions.

On January 15, 2019[5], following the enactment of Senate Bill No. 137, defendant filed a petition for resentencing pursuant to former section 1170.95. On June 24, 2021, the trial court determined defendant had made a prima facie showing of eligibility and issued an order to show cause hearing. On October 29, 2021, the evidentiary hearing took place. The parties stipulated that the court could consider the preliminary hearing transcript, along with the second amended information, the plea agreement and sentencing documents, along with parties' respective briefs and their accompanying exhibits, including the decision in the direct appeal of *People v. Sanns*, E028389 (filed February 14, 2002, nonpub. opn.) in which defendant raised a sentencing error. After considering all the submissions and the arguments of counsel, the court concluded the People had proven beyond a reasonable doubt that the defendant was a major participant who acted with reckless indifference to human life, and denied the petition.

Defendant appealed.

---

[5] Defendant had been paroled and was out of custody at the time of this hearing.

6

1.      ***General Principles Governing Review of a Resentencing Decision***

***Following an Evidentiary Hearing.***

Section 1170.95, subdivisions (b) and (c) (now section 1172.6, subdivisions (b) and (c))[6], create a two-step process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960-962.) "First, the trial court determines whether the petition is facially sufficient and appoints counsel, if requested. [Citation.] If the petition is facially sufficient, then the trial court moves on to subdivision (c), and follows the briefing schedule set forth in the statute. [Citations.] After completion of this briefing, the trial court then determines whether the petitioner has made a prima facie showing he or she is entitled to relief. [Citations.] If so, the trial court must issue an order to show cause and conduct an evidentiary hearing to determine whether the petitioner is entitled to relief. [Citations.]" (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022 (*Owens*).)

"At the evidentiary hearing, the trial court acts as an independent fact finder. The parties may rely on the record of conviction or offer new or additional evidence." (*Owens*, *supra*, 78 Cal.App.5th at p. 1022.) "The prosecution bears the 'burden' to prove 'beyond a reasonable doubt' that the petitioner is ineligible for relief. [Citation.] 'A finding that there is substantial evidence to support a conviction for murder, . . . is

---

[6] Hereafter, we will refer to renumbered section 1172.6.

insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citations.]" (*Ibid*.)

On appeal, "'we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence.'" (*People v. Schell* (2022) 84 Cal.App.5th 437, 442, quoting *People v. Zamudio* (2008) 43 Cal.4th 327, 357; see also *Owens, supra*, 78 Cal.App.5th at p. 1022; *People v. Mitchell* (2022) 81 Cal. App. 5th 575, 591.) In conducting our review, we resolve neither credibility issues nor evidentiary conflicts. (*Owens*, at p. 1022.)

We turn now to defendant's specific arguments.

2.     ***Propriety of the Court's Consideration of the Preliminary Hearing Transcript at the Evidentiary Hearing.***

Defendant argues that Senate Bill No. 775, enacted after defendant's evidentiary hearing, amended section 1172.6, to disallow evidence admissible at a preliminary hearing pursuant to section 872, subdivision (b), which covers police officer testimony regarding out-of-court statements, and requires evidence to be admissible under current law. At the time of the evidentiary hearing, the language of the statute permitted consideration of the entire record of conviction, which, as we will explain, generally permitted the inclusion of the preliminary hearing transcript. In the present case, based on that practice, both parties stipulated the court could consider the preliminary hearing transcript, but defendant did object to consideration of certain hearsay therein.

8

Following the amendment, hearsay in a preliminary hearing transcript is excluded unless it comes within an exception to the hearsay rule. Defendant contends the amendment applies to his case retroactively, and that he is entitled to a new evidentiary hearing. We disagree.

Section 1172.6, subdivision (d)(3), incorporated into the statute by way of Senate Bill No. 775, provides: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (Stats 2021, ch. 551 § 2, effective January 1, 2022.)

The People argue that the amendment does not apply retroactively and that even if it did, the statements defendant made to investigators was admissible as party admissions, and that his codefendants' statements were admissible as statements against their penal interests. This view finds agreement in *Owens*, *supra*, 78 Cal.App.5th at p. 1026, where a majority of the court suggested the procedural rules amended by Senate Bill No. 775 are not retroactive. Other courts have considered the amendment to be retroactive. (See *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006-1007.)

9

We do not need to resolve this issue because, the trial court considered only admissible evidence, rendering any violation of the amended rules harmless. Even if we assumed the revisions set forth in Senate Bill No. 775 apply to the instant petition (see *People v. Porter* (2022) 73 Cal.App.5th 644, 652), there was no error because the court considered only admissible evidence that fell within an exception to the hearsay rule.

According to the amended provisions of section 1172.6, subdivision (d)(3), the trial court at the evidentiary hearing may consider various types of evidence, admissible pursuant to the Evidence Code. At the evidentiary hearing conducted prior to the amendment, case law provided the trial court was not limited to the record of conviction (*People v. Myles* (2021) 69 Cal.App.5th 688, 704), but after the amendment, the court is not expressly precluded from considering it. The amendment to section 1172.6 deleted reference to the term "record of conviction," replacing it with "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).)

Many items comprising the record of conviction are admissible in evidence (Evid. Code, § 1280 [official records]), but even official records may contain inadmissible hearsay. (See *People v. Moore* (1997) 59 Cal.App.4th 168, 178 [judicial notice may be taken of the records of a court, but judicial notice may not be taken of the truth of facts asserted in every document in a court record, citing *People v. Tolbert* (1986) 176 Cal.

10

App. 3d 685, 690].) Special problems are present where the defendant pled guilty and the factual basis for the plea is not preserved, leaving only the record of conviction, with a dollop of hearsay, for us to review.

A plea of guilty encompasses "all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." (*United States v. Broce* (1989) 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed. 2d 927.) Once a plea is accepted, res judicata generally gives conclusive effect to the final judgment in any subsequent litigation involving the same controversy. (*People v. Davis* (1995) 10 Cal.4th 463, 514, fn. 10.) However, the doctrine of res judicata does not apply where, as here, the legislature has created a statutory mechanism to reevaluate the defendant's culpability under a new or different legal standard. (*People v. Carmony* (2002) 99 Cal.App.4th 317, 325-326; see also, *People v. Strong* (2022) 13 Cal.5th 698, 715-718 [a prior criminal judgment will not be given preclusive effect under collateral estoppel principles if the legal landscape surrounding that judgment has changed].)

Section 1170.95, subdivision (d)(3) and it subsequent amendment, section 1172.6, subdivision (d)(3), were designed to allow for the retroactive examination of murder convictions that have already become final. It requires the trial court to determine whether the defendant's conduct constituted murder under the new standards set forth in Senate Bill No. 1437, and it also allows the parties to submit new and additional evidence on that issue. (§ 1172.6, subd. (d)(3).) By its terms, the statute makes clear the trial court can consider a variety of sources in assessing the defendant's eligibility for resentencing.

11

At the time defendant's petition was adjudicated, section 1170.95, subdivision (d)(3), allowed the trial court to examine the entire record of conviction, including not only the plea proceedings, but the preliminary hearing as well. (*People v. Reed* (1996) 13 Cal.4th 217, 230; *People v. Perez* (2020) 54 Cal.App.5th 896, 905, review granted Dec. 9, 2020, S265254.) As amended by Senate Bill No. 775, section 1172.6, subdivision (d)(3) allows the trial court to consider evidence from the preliminary hearing if certain criteria for admissibility are met, that is, if the proffered statements fall within an exception to the hearsay rule.

In the present case, the preliminary hearing consisted of firsthand accounts of detectives' observations of the victim, the car, and the crime scene, along with their testimonies relating the admissions of each of the defendants during their interviews. Defendant's own statements are admissible pursuant to Evidence Code section 1220 as admissions of a party, as he concedes in his brief. The statements of codefendants implicating themselves in the crime were admissible as statements against their penal interests, pursuant to Evidence Code section 1230, but the trial court did not rely on them.

Because the trial court did not consider the statements of the codefendants, concerns about unreliable hearsay, or *Aranda-Bruton* violations (ref. *People v. Aranda* (1965) 63 Cal,.2d 518; *Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed. 2d 476, 88 S.Ct. 1620]) or *Crawford* implications (ref. *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed. 2d 177, 124 S.Ct. 1354]), flowing from the codefendants' statements to detectives that implicated defendant, were avoided: the trial court limited its

consideration of defendant's self-incriminating statements. Those statements were properly considered and established the factual predicate for the trial court's ruling, as defendant has acknowledged.

We conclude the trial court did not commit evidentiary error in relying on evidence of defendant's own admissions, taken from appellant's preliminary hearing, which was submitted to the trial court by stipulation of both sides.

3. ***Whether There is Substantial Evidence to Support the Lower Court's Finding that Defendant Acted with Reckless Indifference to Human Life.***

Defendant argues that without the improperly considered evidence, there is insufficient evidence to support the trial court's finding that the People had proven, beyond a reasonable doubt, defendant acted with reckless indifference to human life. While he does not focus his legal argument on the question of whether defendant was a major participant—addressing most of his argument to the question whether defendant acted with reckless indifference to human life—he does indicate that "it is by no means clear defendant was a major participant, based on the relevant factors set forth in [*People v.*] *Banks* [(2015)] 61 Cal.4th [788], 803." He also argues the trial court failed to consider defendant's youth in ruling on the resentencing petition. We conclude on this record that the People proved beyond a reasonable doubt that defendant acted both as a major participant and with reckless indifference to human life. However, notwithstanding defendant's failure to preserve the issue of his youthful characteristics, the matter should be remanded to consider their impact.

13

Subject to the applicable standard of review discussed above, we analyze these issues with the guidance of the now-familiar decisions in *Banks*, *Clark*, and *Scoggins*. (*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*); *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*).) These state decisions charted a "spectrum of culpability" set forth in two opinions from the Supreme Court of the United States, namely, *Enmund v. Florida* (1982) 458 U.S. 782 [73 L.Ed. 2d 1140, 102 S.Ct. 3368] and *Tison v. Arizona* (1987) 481 U.S. 137 [95 L.Ed. 2d 127, 107 S.Ct. 1676] (*Tison*).

*Enmund* and *Tison* require us to consider where the defendant's conduct falls on this "spectrum of culpability." "On one end of the spectrum is *Enmund*, 'the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state.' [Citation.] At the other end is 'the felony murderer who actually killed, attempted to kill, or intended to kill.' [Citation.]" (*Tison*, *supra*, 481 U.S. at pp. 149-150.) The court in *Scoggins* determined that because the defendant in *Banks*, like the defendant *Enmund*, was a mere getaway driver in an armed robbery, the evidence was insufficient to show that he was a major participant or acted with reckless indifference to human life. (*Scoggins, supra,* 9 Cal.5th at pp. 675-676, citing *Banks*, at pp. 805, 807.)

Applying these principles to the case before us, on the question of whether defendant Brock was a major participant, there is substantial evidence to support the trial court's conclusion. Defendant was not a mere getaway driver; he participated in the

initial planning, went home to get duct tape, dark clothing and gloves, went to the parking lot of the apartment complex where the victim was staying and lay in wait with his companions for a likely prospect, then approached the victim with Sanns to demand the keys of the car, knowing that Sanns had a gun, drove with the group out to the desert, and accompanied Sanns and Ortiz part-way to the area of the landfill where the shooting occurred. Having participated in the planning stage and in actively taking part in the carjacking, defendant was a major participant in the felony murder.

Turning to the question of whether defendant acted with reckless indifference to human life, we employ the approach recommended by the California Supreme Court in *Scoggins, supra*, after summarizing the holdings of *Banks* and *Clark.* Reviewing courts are directed to analyze the totality of the circumstances to determine whether the defendant acted with reckless indifference to human life. "Relevant factors include: [1] Did the defendant use or know that a gun would be used during the felony? [2] How many weapons were ultimately used? [3] Was the defendant physically present at the crime? [4] Did he or she have the opportunity to restrain the crime or aid the victim? [5] What was the duration of the interaction between the perpetrators of the felony and the victims? [6] What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? [7] What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677.)

Applying those factors here, we find (1) defendant knew a gun would be used in the felony. (2) There was only one gun, but defendant approached the victim in his car with Sanns, who had pulled out the gun, and defendant was aware of that fact. (3) Defendant was physically present at the time of the carjacking and was a matter of feet away from the shooting. (4) He had ample opportunity to "restrain the crime or aid the victim." (5) The duration of the crime was sufficient to give the defendant the opportunity to reflect on the planned crime, as well as to consider the possibility of violence flowing from the commission of the crime where a coparticipant had pulled out a firearm. (6) The record does not indicate whether defendant was aware of Sanns' or Ortiz's propensity for violence. This is the only factor arguably favorable to defendant, but it is based on limited information available in the record.[7] There is no affirmative evidence that he was ignorant of their propensities for violence. (7) Defendant made no efforts to minimize the risks of violence during the felony, or to render aid to the victim. These factors amply support the trial court's assessment that defendant acted with reckless indifference to human life.

Defendant also argues that because he was only 16 years old at the time of the crime, his culpability should be evaluated in a manner that takes his youth and immaturity into account, relying on the holdings of *In re Moore* (2021) 68 Cal.App.5th 434 and *People v. Ramirez* (2021) 71 Cal.App.5th 970. In *Moore* and *Ramirez,* the

---

[7] Had the trial court considered the opinion in the direct appeal of Sanns, which the People appended to their briefing in the trial court, but which the trial court disregarded, this factor might not have been favorable to defendant.

16

defendants were convicted of special circumstances murder. Here, the defendant received lenient treatment when he was allowed to plead guilty to the murder alone, in return for dismissal of the special circumstances allegations and the remaining crimes.

We agree with the principle that "'""the background and mental and emotional development of a youthful defendant must be duly considered' in assessing a defendant's culpability.'" [Citation.]" (*People v. Ramirez, supra*, 71 Cal.App.5th at p. 987.) However, the only reference in the record to defendant's age is in the complaint, where defendant's date of birth is given as June 19, 1980, and defense counsel's statement at the original sentencing hearing that the probation report referred to his youthfulness and lack of serious record. That report is not part of this record.

At the evidentiary hearing, defendant did not argue that his youthfulness and immaturity should be considered as a *Banks-Clark* factor and did not proffer any documentation that might aid the trial court in considering the defendant's age as part of the section 1172.6 calculus. Because the records submitted to the trial court did not include the probation report, we have little to review that would shed light on the impact of the defendant's youth on his culpability. The only indication of factors that tangentially relate to defendant's youth is found in the prosecutor's statements at the time of defendant's sentencing hearing, where the prosecutor stated: "In any event, this is a crime, as a lot of murder cases are, that is very difficult to understand particularly when you look at the defendant, Mr. Brock. Mr. Brock comes from a family that tried to do what they could to assist him, in life, and he chose to turn away from his family and turn

17

to friends that led him into the situation that causes him to be before the Court now. [¶] This is a case where Mr. Brock of his own choosing associated with individuals and planned with them to do a carjacking. While it's not clear that Mr. Brock knew that the victim was going to be killed in this case, it's important for Mr. Brock to understand that his choices, his decisions, his actions contributed to the death of Robert Chen. I know that the Court is familiar with the Victim Impact Statements that the probation officer obtained from the victim's family members and included in the probation report.[8] I sincerely hope that Mr. Brock has read those and considered what it is that those impact statements say. [¶] This case was resolved by way of a plea because it's the People's position that that was the appropriate treatment for Mr. Brock based on his conduct, his choices, and his participation in this particular crime. [¶] I know that the Court does not have any discretion in this matter since this is a case that was resolved by way of a plea bargain, but I think it is important for Mr. Brock to understand that he has been shown leniency in that matter, and that leniency was shown to him by virtue of the fact that the People sought something less than the maximum punishment that he would have been exposed. And again his punishment is based on his actions, his decisions, and his conduct. [¶] I can only hope that while Mr. Brock is serving his time in state prison that he comes to the realization that justice, as far as justice can be done in this type of case, was done to him and that he ultimately comes to a realization of just exactly what it is

---

**8** There is no probation report in the record on appeal, although, during the change of plea proceedings, the court referred defendant to probation for a sentencing report.

18

that he has done, not that he's being held responsible for what somebody else has done but for what his own conduct caused him to be in this particular case."

While defendant received leniency, nowhere is his youth or immaturity mentioned, although we discern, based on his apparent date of birth, that he would have been two months shy of 17 years of age at the time of the killing. While it would be easy to say that defendant was given leniency in the plea bargaining due to his youthfulness, that is not clear from this record. It would also be easy to argue that the issue was forfeited, or that trial counsel was ineffective in failing to present the issue of defendant's youth or submit evidence on the issue. But there may have been a valid tactical reason for counsel's actions or failure to act. The issue has been forfeited, but we exercise our discretion to consider it. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

There is substantial evidence to support the court's finding that defendant was a major participant and manifested reckless indifference to human life, but the trial court did not consider defendant's youthful characteristics. We note that a probation report was apparently prepared and filed for consideration at the original sentencing but was not considered at the hearing on the resentencing petition. The reason for this may have been related to the legal question relating to the hearsay nature of the report, or it may have been a tactical decision based on the contents of the report. Because this matter does not come to us on a petition for writ of habeas corpus, there is no indication in the record why the defendant's youth was not raised at the resentencing hearing.

Nevertheless, the probation report should still be a part of the court's file such that portions of it may be considered on remand. In addition, defendant may proffer reports or evaluations prepared while he incarcerated, insofar as section 1172.6 allows for the introduction of new evidence. We therefore remand the matter to the superior court for further evidentiary hearing.

4. ***Trial Counsel Did Not Render Ineffective Assistance of Counsel.***

Defendant argues if his trial counsel forfeited any argument in the trial court relating to improper hearsay at the evidentiary hearing or failure to make all arguments per *Banks* and *Clark*, he is entitled to a new evidentiary because he was deprived of effective assistance of counsel. We disagree.

A claim that counsel's assistance was so defective as to require reversal has two components: First, the defendant must show that counsel's performance was deficient. Second, defendant must show that the deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674].) We conclude that defendant has not established ineffective assistance of counsel for several reasons.

First, the trial court did not rely on the objectionable hearsay portions of the preliminary hearing transcript; it relied exclusively on defendant's own statements, as related by the detective who interviewed defendant. Defendant's incriminating statements, as we have shown above, were admissible and properly considered by the

20

court. As a result, defendant cannot show prejudice so there is no ineffective assistance of counsel.

Second, counsel did object to hearsay in the preliminary hearing testimony, stating: "I think that, first of all, there's a bit of a problem relying wholly on the preliminary hearing transcript. It is part of the record, I understand, but the weight that the Court should be giving to it, the Court has to look at the standards of preliminary hearing. [¶] Preliminary hearing, first of all, allows Prop. 115 hearsay testimony. And also at a preliminary hearing, the burden of proof is not proof beyond a reasonable doubt. So the Court's relying upon an evidentiary hearing that was conducted under a different set of rules, the Prop.115, the hearsay, and on a lower standard of proof." Defense counsel was concerned because the court's comments revealed it gave weight to the evidence adduced at that hearing showing defendant brought duct tape to the carjacking, with which to bind the victim, in finding he was a major participant in the felony, and while he did not call defendant as a witness, he relayed that there was no plan to kill anyone.

To the extent counsel may have been required to make a more specific objection to preserve the challenge, we do not consider it forfeited where the hearing took place before the effective date of the amendment. It is well settled that counsel is not incompetent for failing to anticipate a change in law: "the constitutional standard for effective assistance of counsel has never required . . . prescience." (*People v. Dennis* (1998) 17 Cal.4th 468,537; *People v. Turner* (1990) 50 Cal.3d 668, 703.)

21

Moreover, because the trial court did not consider any evidence that would be violative of the amendment promulgated pursuant to Senate Bill No. 775, even if counsel failed to act diligently, the defendant has not demonstrated prejudice. (*Strickland v. Washington, supra,* 466 U.S. at p. 697; *In re Alvernaz* (1992) 2 Cal.4th 924, 945, citing *In re Fields* (1990) 51 Cal.3d 1063, 1079.)

Third, at the time of appellant's section 1170.95, subdivision (d)(3) hearing following the issuance of the order to show cause, section 1170.95, subdivision (d)(3) provided that, at the evidentiary hearing, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (Former § 1170.95, subd. (d)(3); Stats. 2018, ch. 1015, § 4.) The "record of conviction" includes the preliminary hearing transcripts. (See *People v. Perez* (2020) 54 Cal.App.5th 896, 905; *People v. Silva* (2021) 72 Cal.App.5th 505, 52; *People v. Davenport* (2021) 71 Cal.App.5th 476, 481.) It was reasonable to assume that preliminary hearing transcripts would be submitted at the hearing.

Fourth, there is nothing in the record to explain why defense counsel did not attempt to procure the probation report or submit evidence or argument on the issue of defendant's youthful characteristics or immaturity. There may well have been a valid tactical reason for this strategy, but the record does not show counsel was ever asked the reasons for his actions or inactions, so we cannot say that defense counsel rendered deficient performance. "'"If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an

explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal. [Citation.]"'" (*People v. Johnson* (2016) 62 Cal.4th 600, 653, citing *People v. Weaver* (2001) 26 Cal.4th 876, 955, and *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–268.) We recognize that introducing a probation report can be a double-edged sword, so this issue is best relegated to habeas corpus procedure.

Defendant was not deprived of effective assistance of counsel at the evidentiary hearing.

## DISPOSITION

The judgment is reversed and remanded for a further evidentiary hearing to consider whether the defendant's youthful characteristics and immaturity require reconsideration of the trial court's finding that defendant was a major participant who acted with reckless indifference to human life.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P J.

We concur:

McKINSTER

J.

MILLER

J.

23